IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN A. ARMATAS, Individually and as Personal Medicare Representative and Executor of the Estate of ALEXANDER E. ARMATAS, | ) ) ) ) ) | CASE NO. 5:19-cv-00349 |
| Plaintiffs, | ) ) | JUDGE JOHN R. ADAMS |
| v. | ) ) | MAGISTRATE JUDGE KATHLEEN B. BURKE |
| AULTMAN HEALTH FOUNDATION, *et al.*, | ) ) ) | **REPORT & RECOMMENDATION** |
| Defendants. | ) | |

## I.  Introduction

This case arises from the hospitalization and death of Alexander E. Armatas ("Alexander") at Aultman Hospital in Canton, Ohio, in late 2014. Alexander's son, Steven A. Armatas ("Steven"), filed this action on February 15, 2019, in three capacities: on his own behalf, as the personal Medicare representative for his father, and as executor of his father's estate. Plaintiffs (referred to collectively herein as "Plaintiff") assert 12 state and federal claims against 14 Defendants. This case is the re-filing of a case previously filed by Plaintiff in the Stark County, Ohio, Court of Common Pleas on December 28, 2016.[1]

---

[1] Plaintiff voluntarily dismissed the state court case on February 20, 2018 pursuant to Ohio Civil Rule 41(A)(1)(a). Doc. 1, p. 4, ¶¶ 1-4. The Complaint filed in this Court added three defendants who were not named in the state court action. Doc. 1, p. 4, ¶ 4.

1

Pursuant to the Court's referral of this case to the undersigned for general pretrial supervision and issuance of a Report & Recommendation on any dispositive motions (Doc. 45), the undersigned submits this Report & Recommendation on the Motion for Judgment on the Pleadings filed by Defendants M. Richard Stjernholm, D.O., and Ohio Physicians Professional Corporation dba Surgical Associates of Canton of OPPC ("OPPC")[2] (hereinafter referred to collectively as "Stjernholm Defendants")[3] pursuant to Federal Rule of Civil Procedure 12(c) (Doc. 72) ("Motion").

Plaintiff has asserted two claims against the Stjernholm Defendants: Count I – Medical Malpractice and Count II – Wrongful Death.  In their Motion, the Stjernholm Defendants seek judgment on Count I of the Complaint on the ground that it is barred by the statute of limitations. They do not seek judgment on Count II.  Plaintiff filed an opposition to the Stjernholm Defendants' Motion (Doc. 101) and the Stjernholm Defendants filed a reply (Doc. 106).

For the reasons explained herein, the undersigned recommends that the Court GRANT Defendants' Motion and dismiss Count I as to Dr. Stjernholm and OPPC because the claim asserted therein against those Defendants is barred by the statute of limitations and equitable tolling is not warranted.

## II.     Plaintiffs' Complaint – Factual Allegations relevant to Stjernholm Defendants

On October 11, 2014, Alexander was rushed to the hospital after suffering a cardiac episode while at home.  Doc. 1, p. 9, ¶ 25.  Alexander was 97 years old at the time of his

---

[2] OPPC is the entity that employed Dr. Stjernholm and /or the entity of which Dr. Stjernholm was a principal or owner.  Doc. 1, pp. 5-6, ¶ 10.

[3] The 12 Defendants in addition to the two Stjernholm Defendants are: Aultman Health Foundation, Aultman Hospital, and AultCare Insurance (collectively, the "Aultman Defendants"); Nihad Boutros, M.D., Eyad Nashawati, M.D., Matthew Knoch, M.D., Jeffrey Miller, M.D., Chadi E. Bouserhal, M.D., and Pulmonary Physicians, Inc. of Canton, Ohio ("PPI") (collectively, the "ICU Defendants"); and Mark N. Rose, Gregory Haban, M.D., and Timothy Regula (collectively, the "Rose Defendants").  Doc. 1.

hospitalization. Doc. 1, p. 8, ¶ 22. Dr. Stjernholm and other emergency room personnel worked to intubate and stabilize Alexander and placed him on a respirator. Doc. 1, p. 9, ¶ 25.

Steven is the only child of Alexander. Doc. 1, p. 4, ¶ 5. A few hours after Alexander's admission, Dr. Stjernholm and another emergency room physician, Dr. Randy Johnson, met with Steven and advised him that Alexander had suffered catastrophic injuries and, due to Alexander's advanced age, he would likely die in the next three hours. Doc. 1, p. 9, ¶ 26. Dr. Stjernholm and Dr. Johnson informed Steven that Alexander was suffering from bleeding on the brain, pneumonia, a broken neck or severed spine, cracked vertebrae, a brain contusion, and dying bowel syndrome. Doc. 1, p. 9, ¶ 27. Also, Dr. Stjernholm and Dr. Johnson advised Steven that Alexander was probably paralyzed and he had very likely suffered a stroke or heart attack. *Id.* Plaintiff alleges that, other than a C2 fracture which was later treated with a stabilizing collar, the aforementioned diagnoses proved to be incorrect. *Id.* While Alexander was admitted in the emergency room, no MRI was ordered and no neurologist or neurosurgeon personally examined Alexander.[4] Doc. 1, p. 9, ¶ 28.

In light of their diagnoses regarding Alexander's condition, both Dr. Stjernholm and Dr. Johnson strongly recommended that no life-sustaining treatment be provided and that Alexander be removed from the respirator. Doc. 1, p. 10, ¶ 29. Steven declined to follow the recommendations of Drs. Stjernholm and Johnson and they "became visibly perturbed and annoyed with" Steven's decision. *Id.* Alexander was transferred from the Emergency Room to the Surgical Intensive Care Unit of Aultman Hospital. Doc. 1, p. 10, ¶ 30. During Alexander's admission at Aultman Hospital, other physicians recommended that Alexander be removed from

---

[4] A neurologist was later brought in for a consultation. Doc. 1, p. 12, ¶ 40.

life support but Steven declined to follow those recommendations. Doc. 1, pp. 10, 13-14, 17, 19 ¶¶ 29, 49-50, 64, 74.

Within a short time after Alexander was taken to Aultman and throughout his father's hospital stay, Steven became concerned about discoloration developing on his father's right toes and leg and shared those concerns with various physicians, including Dr. Stjernholm. Doc. 1, pp. 11, 15, 24, ¶¶ 34, 35, 54, 56, 101. On October 31, 2014, Steven specifically requested that an attending nurse contact Dr. Stjernholm to have a vascular surgeon brought in for a consult regarding Alexander's leg. Doc. 1, p. 15, ¶ 56. The nurse subsequently informed Steven that she had spoken with Dr. Stjernholm but Dr. Stjernholm was not going to agree to Steven's request to bring in a vascular specialist for a consult. *Id.*

The evening prior to Alexander's death, Steven and Alexander's wife were called to the hospital by Dr. Bertram, Alexander's attending physician for the evening, who informed them that Alexander's dry gangrene had developed into sepsis and the infection was affecting his bloodstream and vital organs. Doc. 1, pp. 26-27, ¶ 113. Steven and his mother returned to the hospital and remained by Alexander's bedside until his death on December 31, 2014. Doc. 1, p. 27, ¶ 114.

### III. The Stjernholm Defendants' Motion for Judgment on the Pleadings

In their Motion, the Stjernholm Defendants argue that Count I – Medical Malpractice – is a medical claim barred by the applicable one-year statute of limitations. The Stjernholm Defendants do not contend that Count II – Wrongful Death – is untimely and they do not seek dismissal of Count II. Therefore, Defendants' Motion pertains only to Count I.

### IV. Law and Analysis

**A. Defendants' Fed. R. Civ. P. 12(c) motion may be considered as a Fed. R. Civ. P. 12(b)(6) motion**

Plaintiff initially contends that the Defendants' Motion is premature. He argues that Fed. R. Civ. P. 12(c) provides that, "after the pleadings are closed--but early enough not to delay the trial--a party may move for judgment on the pleadings." Doc. 101, p. 2 (quoting Fed. R. Civ. P. 12(c)). Further, Plaintiff argues that Fed. R. Civ. P. 7(a) defines "pleadings" to include complaints and answers but not motions. *Id.* Since a number of parties filed Fed. R. Civ. P. 12(b)(6) motions but not answers, Plaintiff asserts that the pleadings are not closed and the Stjernholm Defendants' Motion for Judgment on the Pleadings is therefore premature and should be denied as such. *Id.*

When a case involves "multiple defendants, all defendants must file an answer before a Rule 12(c) motion can be filed." *Horen v. Board of Educ. of Toledo City School Dist.*, 594 F.Supp.2d 833, 840 (N.D. Ohio 2009). However, a prematurely filed Fed. R. Civ. P. 12(c) motion may be treated as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) if "the issues raised in the motion were sufficiently raised in the moving defendant's answer as affirmative defenses." *Ortiz v. Holmes*, 157 F.Supp.3d 692, 695 (N.D. Ohio 2016); *Horen*, 594 F.Supp.2d at 840-841 (construing a "premature, pre-answer Rule 12(c) motion as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)[]"); *Collins v. Muskegon County Sheriff's Dept.*, 2007 WL 426586, * 5 (W.D. Mich. Feb. 1, 2007) ("[I]t is not improper to treat a premature, pre-answer Rule 12(c) motion as a motion to dismiss under Rule 12(b)(6)."); (*Lohner v. Lake County, Tennessee*, 2017 WL 3160569, * 2 (W.D. Tenn. July 25, 2017) (indicating that "district courts within our circuit have expressed a willingness to construe motions under 12(b)(6) as motions under 12(c) and vice versa[]"). The standard of review is the same for motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) and motions to dismiss under Fed. R. Civ. P. 12(b)(6). *Ortiz*, 157 F.Supp.3d at 696; *Horen*, 594 F.Supp.2d at

5

841.  Thus, a party will not be prejudiced if the court treats a Fed. R. Civ. P. 12(c) motion as a Fed. R. Civ. P. 12(b)(6) motion.  *Horen*, 594 F.Supp.2d at 841.

The basis of the Stjernholm Defendants' Motion is that the medical malpractice claim in Count I is untimely and barred by the statute of limitations contained in O.R.C. 2305.113.  Doc. 72.  In their answer, among other affirmative defenses, Dr. Stjernholm and OPPC assert the statute of limitations as an affirmative defense.  Doc. 26, p. 26, ¶ 290.  Considering the foregoing, even though the pleadings in this case may not be closed, the undersigned finds it appropriate to convert the Stjernholm Defendants' Fed. R. Civ. P. 12(c) motion to a Fed. R. Civ. P. 12(b) motion to dismiss.

### B. Standard of review

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."  *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)(citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)(internal citations omitted).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Fritz*, 592 F.3d at 722 (quoting *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir.2007)).

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The Court must accept all well-pleaded factual

allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Id*. (internal citations omitted). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (internal quotations omitted). "When considering a motion to dismiss on the ground of a statute of limitations, the Court must decide whether 'it is apparent from the face of the complaint that the limit for bringing the claim[s] has passed.'" *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F.Supp.3d 734, 761 (2019) (quoting *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (noting alteration in original)).

      **C.**      **Count I – Medical Malpractice – should be dismissed as untimely**

The Stjernholm Defendants argue that Count I should be dismissed because it is barred by the one-year statute of limitations that applies to medical claims under O.R.C. § 2305.113. That statute permits an extension of the one-year limitations period of up to 180 days if, prior to the expiration of the one-year period, a claimant who has a medical claim provides notice (known as a "180-day letter") to the individual who is the subject of the claim that the claimant is considering bringing an action upon the claim. O.R.C. § 2305.113(B).[5]

Plaintiff asserts that he sent 180-day letters on December 2, 2015. Doc. 101, p. 10, Doc. 101-6. Thus, under O.R.C. § 2305.113, Plaintiff's medical claims were required to be commenced not later than May 30, 2016, which is 180 days from Plaintiffs' sending of the 180-day letters.[6] However, Plaintiff did not file his complaint in the Stark County Court of Common Pleas until December 28, 2016, many months after the statute of limitations had run. The date

---

[5] In that event, the limitations period is extended to 180 days after the notice is given. O.R.C. § 2305.113(B).

[6] Plaintiff appears to have mis-counted when he indicates in his opposition brief that the statute expired on June 2, 2016. Doc. 101, p. 10.

7

Plaintiff filed his state court action, not the later date on which this case was filed, is the operative date for determining whether Plaintiff timely filed his Complaint.[7]

**Equitable Tolling**

Plaintiff opposes dismissal of Count I, not on the grounds that his initial state court lawsuit was filed within the applicable statute of limitations under O.R.C. § 2305.113, but on the basis of equitable tolling. Plaintiff argues that equitable tolling should be applied to preclude application of the statute of limitations because the Stjernholm Defendants and their agents knowingly and willfully denied Plaintiff access to Alexander's medical records such that Plaintiff was unable to obtain an affidavit of merit as required by Ohio Civ. R. 10(D) and thus was unable to timely file within the statute of limitations. Doc. 101, pp. 3-11.

When a party asserts that he should be entitled to tolling of the statute of limitations and when the claim at issue in federal court arises under state law, state, not federal, tolling principles apply. *See Roberson v. Macnicol*, 698 Fed. Appx. 248, 250 (6th Cir. June 19, 2017). As the Ohio Tenth District Court of Appeals explained, "[e]quitable tolling is only available in compelling cases which justify a departure from established procedure . . . [and therefore] equitable tolling is to be applied sparingly and only in exceptional circumstances." *McCualsky v. Appalachian Behavioral Healthcare*, 100 N.E.3d 1049, 1055 (2017) (internal citations and quotations omitted). "A litigant seeking equitable tolling must demonstrate that he or she diligently pursued his or her rights, but some extraordinary circumstance stood in his or her way and prevented timely action." *Id.* (internal citations omitted). To assess whether equitable

---

[7] As noted above, this case is a re-filing of the previously filed Common Pleas Court case, which Plaintiff dismissed voluntarily. Plaintiff claims the benefit of the Ohio savings statute, O.R.C. §2305.19, for the time period between the dismissal of his state court case and the filing of this case. That statute tolls the running of the statute of limitations for a one year period after a case is dismissed other than on the merits but it applies only where the first filed action was timely commenced. *See e.g., Moore v. Dept. of Rehab. & Corr.*, 2011 WL 1225466, * 5 (Ohio App. Ct. Mar. 31, 2011).

8

tolling is warranted, "courts generally consider: (1) lack of actual notice of the filing requirement, (2) lack of constructive notice of the filing requirement, (3) diligence in pursuing one's rights, (4) absence of prejudice to the defendant, and (5) a plaintiff's reasonableness in remaining ignorant of the filing requirements." *Moore v. Ohio Dept. of Rehab. & Corr.*, 2011 WL 1225466, * 6 (Ohio App. Ct. Mar. 31, 2011).

Defendants argue that Plaintiff did not act diligently in pursuing his rights, pointing out that Plaintiff could have but did not seek an extension of time to file the affidavit of merit, as provided for in Ohio Civ. R. 10(D), and did not file an action under O.R.C. § 3701.74(C) to enforce a right of access to medical records. Doc. 106, pp. 3-4.

Plaintiff does not assert that he took those actions but argues that the Court should conclude that he acted diligently in pursuing his rights through other actions: namely, by sending letters to Aultman Health Foundation's in-house and outside counsel,[8] filing a state court declaratory judgment action on September 29, 2015, petitioning the state trial court for release of Alexander's medical records; and mailing 180-day letters to extend the applicable statute of limitations. Doc. 101, pp. 10-11.

For the reasons explained below, the undersigned finds that Plaintiff has not demonstrated that equitable tolling of the statute of limitations is warranted.

Plaintiff Steven Armatas is an Ohio attorney who brings this action individually and on behalf of the other Plaintiffs. Plaintiff has not argued nor shown that he lacked actual or constructive knowledge of the applicable statute of limitations or filing requirements.

---

[8] Plaintiff does not clearly identify the letters he is referring to. Doc. 101, p. 10.

Plaintiff indicates that he ultimately obtained the medical records on June 10, 2016. Doc. 101, p. 10. Yet, he offers no reason for waiting over six months, until December 28, 2016, to file his complaint.

Furthermore, Plaintiff acknowledges the ability of a plaintiff to seek an extension of time under Ohio Civ. R. 10(D)(2) to file an affidavit of merit but he failed to seek such an extension prior to expiration of the statute of limitations. Doc. 101, p. 10. Plaintiff's explanation for not seeking an extension of time to file the affidavit of merit while he was actively seeking a court order for release of medical records in state court is that Ohio Civ. R. 10(D) does "not call for an endless series" of extensions. Doc. 101, p. 10. However, Ohio Civ. R. 10(D)(2) provides that an extension of time to file an affidavit of merit may be extended beyond 90 days "if the court determines that a defendant or non-party has failed to cooperate with discovery or that other circumstances warrant extension." *See* Ohio Civ. R. 10(D)(2)(b). Thus, not only could Plaintiff have requested an initial 90-day extension, he could have sought extensions beyond 90 days.

Plaintiff also contends that, had the trial judge denied a request for extension of time, the case would have been dismissed <u>with prejudice</u> and the medical malpractice claim would have been forever barred. Doc. 101, p. 10 (emphasis in original). However, Plaintiff's argument is contrary to the plain text of Ohio Civ. R. 10(D), which provides, "Any dismissal for failure to comply with this rule shall operate as a failure <u>otherwise than on the merit</u>s." Ohio Civ. R. 10(D)(2)(d) (emphasis supplied). *See also Troyer v. Janis*, 132 Ohio St.3d 229, 232 (2012) (holding "that a dismissal of a complaint for failure to attach the affidavit of merit required by Civ. R. (10)(D)(2) is an adjudication otherwise than on the merits and is a dismissal without prejudice by operation of law[]"). Thus, if Plaintiff had timely filed his complaint without complying with Ohio Civ. R. 10(D), and the case had been dismissed, the dismissal would have

been otherwise than on the merits and Plaintiff would have had an opportunity to refile under Ohio's savings statute.

Plaintiff argues that the issue of equitable tolling may not always be suitable for disposition on a Fed. R. Civ. P. 12(b)(6) or 12(c) motion because the court may have to resolve disputed factual matters.  Doc. 101, p. 11 (citing non-binding case law).  However, in this case, it is undisputed that Plaintiff did not seek an extension of time to file an affidavit of merit as provided for in Ohio Civ. R. 10(D)(2) prior to the expiration of the statute of limitations.  And Plaintiff's explanations for not doing so do not persuade the undersigned that Plaintiff's case is one which warrants the application of equitable tolling.  *See McCualsky*, 100 N.E.3d at 1054-1055 ("Equitable tolling is only available in compelling cases which justify a departure from established procedure [and therefore] . . . equitable tolling is to be applied sparingly and only in exceptional circumstances.").

Considering the foregoing, the undersigned finds that Plaintiff's failure to seek any extension of time to file an affidavit of merit prior to the expiration of the statute of limitations denotes a lack of due diligence.  Plaintiff's allegations that the Stjernholm Defendants or their agents were involved in attempting to hinder Plaintiff's ability to obtain medical records does not excuse Plaintiff's failure to exercise due diligence.  And the undersigned does not find exceptional circumstances warranting the application of equitable tolling.  Thus, the undersigned recommends that the Court GRANT the Stjernholm Defendants' Motion and dismiss Count I as barred by the statute of limitations.

### V. Conclusion and Recommendation

For the reasons discussed herein, the undersigned recommends that the Court GRANT the Stjernholm Defendants' Motion and dismiss Count I as to Dr. Stjernholm and OPPC because

the claim asserted therein is barred by the statute of limitations and equitable tolling is not warranted.

Dated: December 19, 2019     */s/ Kathleen B. Burke*
　　　　　　　　　　　　　　　　Kathleen B. Burke
　　　　　　　　　　　　　　　　United States Magistrate Judge

## **OBJECTIONS**

　　　Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).