IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEVEN A. ARMATAS, Individually ) CASE NO.  5:19-cv-00349
and as Personal Medicare Representative )
and Executor of the Estate of )
ALEXANDER E. ARMATAS, )
)
        Plaintiffs, ) JUDGE JOHN R. ADAMS
)
        v. ) MAGISTRATE JUDGE
) KATHLEEN B. BURKE
AULTMAN HEALTH )
FOUNDATION, *et al.*, )
) **REPORT & RECOMMENDATION**
        Defendants. )

## I.      Introduction

This case arises from the hospitalization and death of Alexander E. Armatas

("Alexander") at Aultman Hospital in Canton, Ohio, in late 2014.  Alexander's son, Steven A.

Armatas ("Steven"), filed this action on February 15, 2019, in three capacities: on his own

behalf, as the personal Medicare representative for his father, and as executor of his father's

estate.  Plaintiffs (referred to collectively herein as "Plaintiff") assert 12 state and federal claims

against 14 Defendants.  This case is the re-filing of a case previously filed by Plaintiff in the

Stark County, Ohio, Court of Common Pleas on December 28, 2016.[1]  Prior to filing that case,

---

[1] Plaintiff voluntarily dismissed the state court case on February 20, 2018 pursuant to Ohio Civil Rule 41(A)(1)(a).
Doc. 1, p. 4, ¶¶ 1-4.  The Complaint filed in this Court added three defendants who were not named in the state court
action. Doc. 1, p. 4, ¶ 4.

Plaintiff had filed a state court action for declaratory and injunctive relief and punitive damages, also related to Alexander's hospitalization.[2]

Pursuant to the Court's referral of this case to the undersigned for general pretrial supervision and issuance of a Report & Recommendation on any dispositive motions (Doc. 45), the undersigned submits this Report & Recommendation on the Motion for Judgment on the Pleadings filed by Defendants Aultman Hospital ("Aultman Hospital" or "Aultman"), Aultman Health Foundation ("AHF"), and Aultcare Insurance Company ("AultCare") (referred to collectively as "Aultman Defendants" or "Defendants")[3] pursuant to Federal Rule of Civil Procedure 12(c) (Doc. 93) ("Motion"). Plaintiff filed an opposition to the Motion (Doc. 99) and the Defendants filed a reply (Doc. 105).

For the reasons explained in detail below, the undersigned recommends that the Court GRANT in part and DENY in part the Aultman Defendants' Motion.  In summary, the undersigned recommends that all Counts asserted against the Aultman Defendants, with the exception of Count II (Wrongful Death) as asserted against Defendant Aultman Hospital, be dismissed.

## II.     Plaintiff's Complaint – Allegations against the Aultman Defendants

### A.            Claims Against the Aultman Defendants

---

[2] *Armatas v. Aultman Health Foundation, et al.*, Stark County Common Pleas Case No. 15 CV 02003 ("the DEC action"). The DEC action is discussed below in connection with Defendants' argument that they are entitled to judgment on all but one Count of the Complaint herein based on principles of res judicata.

[3] The11 Defendants in addition to the three Aultman Defendants are: Nihad Boutros, M.D., Eyad Nashawati, M.D., Matthew Knoch, M.D., Jeffrey Miller, M.D., Chadi E. Bouserhal, M.D., and Pulmonary Physicians, Inc. of Canton, Ohio ("PPI") (collectively, the "ICU Defendants"); M. Richard Stjernholm, D.O. and Ohio Physicians Professional Corporation dba Surgical Associates of Canton of OPPC (collectively, the "Stjernholm Defendants"); and Mark N. Rose, Gregory Haban, M.D., and Timothy Regula (collectively, the "Rose Defendants").  Doc. 1.

Plaintiff asserts the following Counts of the Complaint against all the Aultman Defendants: Counts IV (Violations of the Federal Medicare Act and Federal Medicare Regulations, V (Negligent Hiring and Supervision), VI (Fraud), IX (Denial of Court and Abuse of Process), XI (Civil Conspiracy), and XII (Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO")).

The following Counts are asserted against Defendants AHF and Aultman only: Counts I (Medical Malpractice), II (Wrongful Death), VII (Intentional Infliction of Emotional Distress (IIED)), and VIII (Interference with Business Relations).  Count III (Breach of Contract) is asserted against Defendants AHF and AultCare only.  Count X (Violation of Federal Civil Rights Statutes) is not asserted against any of the Aultman Defendants.

### B.  Factual Allegations

On October 11, 2014, Alexander was rushed to Aultman Hospital after suffering a cardiac episode while at home.  Doc. 1, p. 9, ¶ 25.  Alexander was 97 years old at the time of his hospitalization.  Doc. 1, p. 8, ¶ 22.  Alexander was admitted to the Emergency room.  Doc. 1, p. 9, ¶25.  Alexander was transferred to the Intensive Care Unit and remained hospitalized at Aultman Hospital until his death on December 31, 2014.   Doc. 1, p. 6, ¶ 11.  Steven is the only child of Alexander.  Doc. 1, p. 4, ¶ 5.  Alexander was survived by his son and his wife, Dionyosula A. Armatas.  Doc. 1, p. 5, ¶ 6.

AHF is an Ohio nonprofit corporation.  It is the parent corporation of Aultman Hospital and AultCare and "exercises dominion and control over the management and operations of" those entities.  Doc. 1, p. 5, ¶ 7.  Aultman Hospital is an Ohio nonprofit corporation that "held itself out to the public . . . as being sufficiently staffed and equipped with physicians . . . and other personnel who were competent and able to provide medical care within the acceptable

standards of practice."  Doc. 1, p. 5, ¶ 8.  AultCare is an Ohio corporation that is "the sponsor and operator of PrimeTime Health Care Plan-Timken Company, a Medicare Advantage Plan (the "AultCare MAP"), Alexander's sole health insurance provider."  Doc. 1, p. 5, ¶ 9.

Dr. Stjernholm, by or through Surgical Associates, was engaged by Aultman as either an employee, agent or contractor and granted privileges at Aultman Hospital.  Doc. 1, p. 6, ¶ 11.  Dr Stjernholm and other emergency room personnel worked to intubate and stabilize Alexander and placed him on a respirator.  Doc. 1, p. 9, ¶ 25.  A few hours after Alexander's admission, Dr. Stjernholm and another emergency room physician, Dr. Randy Johnson, met with Steven and advised him that Alexander had suffered catastrophic injuries and, due to Alexander's advanced age, he would likely die in the next three hours.  Doc. 1, p. 9, ¶ 26.  Dr. Stjernholm and Dr. Johnson informed Steven that Alexander was suffering from bleeding on the brain, pneumonia, a broken neck or severed spine, cracked vertebrae, a brain contusion, and dying bowel syndrome. Doc. 1, p. 9, ¶ 27.  Also, Dr. Stjernholm and Dr. Johnson advised Steven that Alexander was probably paralyzed and he had very likely suffered a stroke or heart attack.  *Id.*  Other than a C2 fracture which was later treated with a stabilizing collar, the aforementioned diagnoses proved to be incorrect.  *Id.*  While Alexander was admitted in the emergency room, no MRI was ordered and no neurologist or neurosurgeon personally examined Alexander.  Doc. 1, p. 9, ¶ 28.  In light of their diagnoses regarding Alexander's condition, both Dr. Stjernholm and Dr. Johnson strongly recommended that no life-sustaining treatment be provided and that Alexander be removed from the respirator.  Doc. 1, p. 10, ¶ 29.  Steven declined to follow the recommendations of Drs. Stjernholm and Johnson and they "became visibly perturbed and annoyed with" Steven's decision.  *Id.*

4

Alexander was transferred from the Emergency Room to the Surgical Intensive Care Unit of Aultman Hospital in the early morning hours of October 11.[4]  Doc. 1, p. 10, ¶ 30.  Drs. Nashawati, Boutros, Miller, Bouserhal, and Knoch, by and through Pulmonary Physicians, Inc. of Canton, Ohio, were engaged by Aultman either as employees, agents, or contractors and granted privileges at Aultman Hospital to oversee the medical care and treatment of patients admitted to the Surgical Intensive Care and Medical Intensive Care Units of Aultman Hospital. Doc. 1, p. 7, ¶ 14.

A neurologist was brought in six days after Alexander's admission for a consultation. Doc. 1, p. 12, ¶ 40.  Alexander was not personally examined by a neurologist until several weeks later.  *Id.*[5]  In treating Alexander, AHF and Aultman Hospital relied on a small group of temporary *ad locum* physicians who were from outside the area, understaffed and lacked proper credentialing and licensing in the State of Ohio.  Doc. 1, p. 12, ¶ 41.

One of the *ad locum* neurologists assigned to Alexander's case was Dr. Ammar El-Nachef who resided in Omaha, Nebraska.  Doc. 1, p. 12, ¶ 42.  Dr. El-Nachef conducted only a cursory review of Alexander's medical records and, without ever personally examining Alexander or speaking with Alexander or his family, agreed with the recommendation of Dr. Stjernholm and the ICU physicians that all medical treatment for Alexander should be withdrawn.  *Id.*  Following his review of Alexander's records and providing his diagnosis, Dr. El-Nachef returned to Omaha. Doc. 1, p. 12, ¶ 43.  A few weeks later, another *ad locum* neurologist, Nancy Juopperi, D.O., was brought in.  Doc. 1, p. 13, ¶ 44.  Dr. Juopperi was based

[4] The Complaint indicates that the transfer to the ICU occurred on October 11, 2016.  Doc. 1, p. 10, ¶ 30. Considering that Alexander's death occurred on December 31, 2014, the reference to 2016 must be a typographical error.

[5] Plaintiff alleges that, shortly before Alexander was admitted to Aultman Hospital, AHF and the hospital had terminated the long-term relationship that they had with NeuroCare, a local neurological practice group that had provided staffing for Aultman Hospital's neurological needs for many years.  Doc. 1, p. 12, ¶ 41.

in Michigan and was not licensed to work in Ohio while at Aultman Hospital.  *Id.*  After

examining Alexander, Dr. Juopperi returned to Michigan.  *Id.*  Although Dr. Juopperi told

Plaintiff she was a "long-time Aultman employee," she was never employed by Aultman

Hospital but instead was a short-term independent contractor.  Doc. 1, p. 13, ¶ 45.  Neither Dr.

El-Nachef or Dr. Juopperi ordered an MRI or made any effort to address Alexander's brain

swelling.  Doc. 1, p. 13, ¶ 46.  Also, neither physician was available for follow-up care or to

consult with Alexander's family after they left Aultman Hospital.  *Id.*

During Alexander's admission at Aultman Hospital, other physicians recommended that

Alexander be removed from life support but Steven declined to follow those recommendations.

Doc. 1, pp. 10, 13-14, 17, 19 ¶¶ 29, 49-50, 64, 74.  Steven was exposed to "relentless,

overbearing pressure by the named-Defendant physicians and other Aultman personnel to sign a

DNR and/or immediately remove Alexander from life support so as to allow him to perish of

natural causes, even though he was fully insured and improving during this period of time."

Doc. 1, p. 11, ¶ 38.  The matter of palliative care for Alexander was submitted by Dr. Boutros

and his colleagues to the Aultman Hospital Ethics Committee.  Doc. 1, pp. 11-12, 13-14 ¶¶ 39,

48-50.  The Ethics Committee voted to reject the recommendation of Drs. Boutros and

Nashawati and to allow Alexander to continue receiving full-code medical treatment for an

indefinite period of time while continuing to monitor the situation.  Doc. 1, p. 14, ¶ 50.

Shortly after Alexander's admission and continuing throughout his stay at the hospital,

Steven was concerned about discoloration developing on his father's right toes and leg and

shared those concerns with various physicians.  Doc. 1, pp. 11, 15, 24, ¶¶ 34, 35, 54, 56, 101.

On October 31, 2014, Steven was so alarmed by the growing discoloration of Alexander's right

foot and leg that he specifically requested that an attending nurse contact Dr. Stjernholm to have

a vascular surgeon brought in for a consult regarding Alexander's leg.  Doc. 1, p. 15, ¶ 56.  The nurse later informed Steven that Dr. Stjernholm was not going to agree to Steven's request to bring in a vascular specialist for a consult.  *Id.*  Later that day, Steven contacted Dr. Grossman, chairman of the Aultman Hospital Ethics Committee, to complain about Dr. Stjernholm's decision not to call in a vascular specialist.  Doc. 1, p. 15, ¶ 57.  Dr. Grossman indicated he agreed a vascular surgeon should be consulted but stated that, pursuant to Aultman Hospital protocols, he did not have the authority to overrule Dr. Stjernholm's decision.  *Id.*

In November,[6] after Alexander was seen by Dr. Miller, one of the rotating ICU physicians, Dr. Miller yelled at Steven regarding how Steven was treating Alexander.  Doc. 1, pp. 15-16, ¶¶ 58-59.  In response, Steven explained that his concerns regarding his father's leg were being ignored by the other physicians.  Doc. 1, p. 16, ¶ 60.  Following the exchange, Dr. Miller relented and agreed to have Dr. Butler, the on-call vascular surgeon, see Alexander.  Doc. 1, p. 16, ¶ 60.  After examining Alexander, Dr. Butler informed Steven that Alexander's discoloration was dry gangrene setting in and it had the potential of turning into a serious infection but had not yet done so.  Doc. 1, p. 16, ¶ 61.  When Dr. Butler was asked by Steven whether Dr. Butler felt he was not called in earlier because treatment for Alexander's leg could be dangerous or because his father was old and the physicians thought he would die soon anyhow, Dr. Butler replied, "It's probably a little bit of both."  Doc. 1, p. 16, ¶ 62.

Steven sought out second opinions regarding Alexander's diagnosis and prognosis.  Doc. 1, pp. 17-19, 26 ¶¶ 66-74, 109-110.  Plaintiff alleges that one or more of the ICU physicians

---

[6] The Complaint indicates that the examination by Dr. Miller occurred on November 1, <u>2016</u>.  Doc. 1, pp. 15-16, ¶ 58.  Since Alexander died on December 31, <u>2014</u>, the reference to 2016 must be a typographical error.

interfered with Steven's attempts to obtain those second opinions regarding his father's medical condition.  Doc. 1, pp. 19-20, 26 ¶¶ 75-81, 111-112.

On November 21, 2014, Steven was called to the ICU ward to discuss his father's situation.  Doc. 1, pp. 20-21, ¶ 82.  During that meeting, which was attended by Dr. Grossman, Dr. Nashawati, and Ms. Paumier,[7] Dr. Nashawati "angrily told Plaintiff: 'This situation with your father has gone on long enough.  Before the end of this weekend, you need to either remove your father from life support or have him transferred to another hospital.  Otherwise, first thing Monday morning, the Aultman Hospital Legal Department has authorized a lawsuit to be filed in Probate Court against you and your mother for the purpose of removing you and her as caretakers and appointing a guardian *ad litem* to assume responsibility for your father's care.'"  Doc. 1, p. 21, ¶ 83.  Steven sought specifics from Dr. Nashawati as to who authorized such action and Dr. Nashawati responded only that it was "the Aultman Legal Department."  Doc. 1, p. 21, ¶ 84.  Steven and his mother did not remove Alexander from life support and they were not sued to remove them as Alexander's caretakers.  Doc. 1, p. 21, ¶ 86.

On November 24, 2014, Steven, in his capacity as Alexander's "Personal Representative" under federal Medicare laws, prepared and attempted to submit a grievance regarding alleged improprieties to submit to both the AultCare MAP and the Aultman Hospital Patient Advocacy Group ("Aultman PAG").  Doc. 1, p. 22, ¶ 90.  A representative of the AultCare MAP declined to accept the grievance on the grounds that it had to be submitted and signed by the patient, i.e., Alexander.  Doc. 1, p. 22, ¶ 91.  Steven explained that his father was in a coma and obtaining his signature was not possible.  Doc. 1, pp. 22-23, ¶ 92.  The representative indicated that there was nothing she could do to assist him.  *Id.*  Also, on that same day, Steven went to the Aultman PAG

---

[7] Dr. Grossman was an Aultman palliative care specialist and chair of the Aultman Hospital Ethics Committee (Doc. 1, pp. 11, 13 ¶ 39, 49) and Ms. Paumier was the ICU Patient Liaison for Aultman Hospital (Doc. 1, p. 13, ¶ 49).

office to submit a copy of his grievance.  Doc. 1, p. 23, ¶ 93.  He was informed by a representative that the matter would be reviewed as required by Aultman Hospital policy and she would get back to him.  *Id.*  On November 30, 2014, Steven delivered a "slightly revised and corrected version of his original grievance" to the AultCare MAP and the Aultman PAG.  Doc. 1, p. 23, ¶ 94.

On December 2, 2014, the AultCare MAP informed Steven in an unsigned letter that a grievance submitted by a non-enrollee could not be processed unless the patient had designated the individual submitting the grievance in writing as the patient's Power of Attorney ("POA").  Doc. 1, p. 23, ¶ 95.   Steven contacted the office of Congressman James S. Renacci for assistance.  Doc. 1, pp. 23-24, ¶¶ 96-97.  On December 4, 2014, after Representative Renacci's office contacted the AultCare MAP, a representative of the AultCare MAP informed Steven that his grievance would be accepted and processed.  Doc. 1, pp. 23-24, ¶ 97.

On December 17, 2014, Dr. Miller informed Plaintiff that Alexander's care was being transferred to the supervision of Alexander's personal family physicians, Internal Medicine Associates of Canton, Inc. (the "Family Doctors").[8]  Doc. 1, p. 24, ¶ 98.  Dr. Miller advised that the ICU physicians would continue as consultants on Alexander's case and Alexander would remain in the same ICU room and be cared for by the same ICU nurses.  Doc. 1, p. 24, ¶ 99.  On the evening of December 17, 2014, Steven had a photographer take photographs of Alexander's right leg and foot to document the dry gangrene.  Doc. 1, p. 24, ¶ 101.

Following a confrontation between Dr. Boutros and Steven, during which Dr. Boutros screamed  ". . . you are a terrible son; look at this man's eyes, he is dead; you should be ashamed to call yourself this man's son[,]" (Doc. 1, p. 25, ¶ 103), Steven supplemented his original

---

[8] The Family Doctors were Dr. Robert Sabota, Dr. Kevin Hill, and Dr. Jason Bertram.  Doc. 1, p. 24, ¶ 98.

grievance "describing Dr. Boutros' unprofessional conduct and defamatory remarks" and submitted it to the AultCare MAP (Doc. 1, p. 25, ¶ 106).  Doc. 1, pp. 24-25, ¶¶ 102-107.

The evening before Alexander's death, at approximately 10:30 p.m., Steven and Alexander's wife were called to the hospital by Dr. Bertram, a family doctor who was Alexander's attending physician for the evening.  Doc. 1, pp. 26-27, ¶ 113.  Dr Bertram informed them that Alexander's dry gangrene had developed into sepsis and the infection was affecting his bloodstream and vital organs and Alexander's death could be imminent.  Doc. 1, pp. 24, 26-27, ¶¶ 98, 113.  Steven and his mother went immediately to the hospital and remained by Alexander's bedside until his death early in the morning on December 31, 2014.  Doc. 1, p. 27, ¶ 114.

Alexander was an enrollee in the AultCare MAP under Part C of the Medicare Act.  Doc. 1, pp. 40-41, ¶¶ 183, 186.  Alexander was not provided his "Notice of Medicare Rights" statement within 48 hours of his admission to Aultman on October 11, 2014.  Doc. 1, p. 11, ¶ 36.  During Alexander's stay in the ICU, he and Steven were not provided any notice or information regarding their rights to file complaints or seek review of Alexander's medical care.  Doc. 1, p. 11, ¶ 37.

Following Alexander's death, on or about January 9, 2015, Steven received an unsigned letter from the AultCare MAP indicating that the AultCare MAP had completed its federally-mandated investigation of his grievance but could not share the results with anyone because the information was deemed "peer review" and therefore "confidential."[9]  Doc. 1, p. 27, ¶ 115.  Plaintiff felt that the response was unsatisfactory and informed the AultCare MAP of his view.  Doc. 1, p. 27, ¶ 116.  In a letter dated February 20, 2015, the AultCare MAP responded "offering

---

[9] Plaintiffs did not receive a response to the copy of the grievance submitted to the Aultman PAG.  Doc. 1, p. 28, ¶ 117.

to 'extend a hand and work with you to continue any necessary communications including a formal response to your grievance,' provided Plaintiff first submit additional 'documentation or information' confirming he was the appropriate legal representative of his father's affairs."  Doc. 1, p. 27, ¶ 116.  In February 2015 and March 2015, on behalf of his father and then on behalf of his mother who was also an enrollee, Steven requested from the AultCare MAP a complete report of its grievance and appeals data for its most recent reporting period.  Doc. 1, p. 28, ¶¶ 118-120.  With respect to the request submitted on behalf of Alexander, the AultCare MAP would not provide the requested information on the basis that the AultCare MAP was not certain that Steven was his father's true representative.  Doc. 1, p. 28, ¶ 119.  The AultCare MAP provided the requested report on May 12, 2015, in response to the request submitted on behalf of his mother.  Doc. 1, p. 28, ¶ 120.  Plaintiff alleges that the report "failed to include the most recent data available and contained untrue statements of material fact and omissions to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading."  Doc. 1, p. 28, ¶ 121.

On May 27, 2015, Steven visited Aultman Hospital to check on the status of the complaint submitted to the Aultman PAG, follow up with the AultCare MAP, and to start the process of obtaining his father's medical records.  Doc. 1, pp. 28-29, ¶ 122.  Steven was informed by an Aultman representative that senior Vice President Mark N. Rose instructed all Aultman personnel not to speak with or assist Steven and Steven was asked to leave the premises.  Doc. 1, p. 29, ¶ 123.  Thereafter, Steven received a letter from Defendant Rose stating that any attempts by Steven to speak with any Aultman employee about anything relating to his father would result in a lawsuit being filed against him.  Doc. 1, p. 29, ¶ 124.

Steven filed an action for declaratory judgment, injunctive relief, and punitive damages on September 29, 2015,[10] against Aultman Health Foundation in the Stark County Court of Common Pleas.  Doc. 1, p. 29, ¶ 125.[11]  During the course of that case, Steven obtained an order, on or about June 6, 2016, ordering the hospital to release Alexander's medical records to Steven. Doc. 1, p. 29, ¶ 125.

Plaintiff alleges that, on or about April 4, 2017, he formed a reasonable belief that Aultman Hospital or AultCare had released Alexander's medical records to their counsel and they directed their counsel to and/or their counsel acted as if they did not have the records for over one year for the purpose of engaging Plaintiff in vexatious litigation regarding obtaining those records.  Doc. 1, pp. 29-30, ¶ 126.  Based on such belief, in an effort to determine who Alexander's private health information ("PHI") had been disclosed to, on or about July 16, 2018, Steven, in his capacity as Executor of his father's estate, sought an accounting of his father's PHI from the Aultman Medical Records Department for the time period January 1, 2015, through June 30, 2018.  Doc. 1, p. 30, ¶¶ 127-128.  On January 31, 2019, Plaintiff received a delayed reply to his request for an accounting and that accounting did not report disclosure of Alexander's medical records to the two law firms providing services to AHF, Aultman Hospital and AultCare during the period covered by the request.  Doc. 1, p. 30, ¶¶ 128-130.  Plaintiff alleges that, after receiving Alexander's medical records from Aultman Hospital, attorneys for

---

[10] The Complaint states that the DEC action was filed on or about September 23, 2015.  Doc. 1, p. 29, ¶ 125.  The Stark County Court of Common Pleas docket and time stamp on the DEC action show that it was filed on September 29, 2015.  *See*  https://www.starkcjis.org/#/case/detail/CPC/2015CV02003; Doc. 25-3.  Fed. R. Evid. 201(b)(2) allows a court "to judicially take notice of a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See also e.g.*, *Ashipa v. Warden, Chillicothe Corr. Inst.*, 2009 WL 3152840, *3 (S.D. Ohio Sept. 30, 2009) (taking judicial notice of online docket records available to the public through the internet).

[11] *See also*  https://www.starkcjis.org/#/case/detail/CPC/2015CV02003; Doc. 25-3.

Aultman Hospital "at Aultman's direction and/or with Aultman's knowledge, continued to falsely represent to Plaintiff and various courts presiding over the litigation[12] that they did not possess such records and still needed to have them released via court order, without any HIPAA privacy protections attached, for the sole purpose of hindering and delaying Plaintiff's prosecution of his case." Doc. 1, pp. 30-31, ¶ 131.

### III. Aultman Defendants' Motion for Judgment on the Pleadings

In their Motion, the Aultman Defendants argue that:

(1) All claims brought against all three of the Aultman Defendants, with the exception of the claim in Count IX (Denial of Court and Abuse of Process), could have been brought in the state court declaratory judgment action filed against AHF on September 29, 2015, and therefore should be dismissed based on res judicata (Doc. 93, pp. 2-5, Doc. 105, pp. 1-4);

(2) The medical claims asserted against Aultman and AHF are barred for lack of an affidavit of merit under Ohio Civ. R. 10(D)(2) (Doc. 93, pp. 5-6, Doc. 105, pp. 3-4);

(3) Counts I (Medical Malpractice), III (Breach of Contract), IV (Violations of the Federal Medicare Advantage Act and Medicare Advantage Act Regulations, V (Negligent Hiring and Supervision), VI (Fraud), VII (Intentional Infliction of Emotional Distress ("IIED")), VIII (Interference with Business Relations), IX (Denial of Court and Abuse of Process), XI (Civil Conspiracy), and XII (Violation of RICO) are all medical claims under Ohio law and are barred by the one-year statute of limitations contained in O.R.C. § 2305.113(A) (Doc. 93, pp. 6-10, Doc. 105, pp. 4-6); and

(4) Counts III through IX and Counts XI and XII fail as a matter of law (Doc. 93, pp. 11-22, Doc. 105, pp. 7-9).

---

[12] Plaintiff does not specifically identify which litigation he is referring to.

## IV.  Law and Analysis

### A.  Defendants' Fed. R. Civ. P. 12(c) motion may be considered as a Fed. R. Civ. P. 12(b)(6) motion

In his opposition brief, Plaintiff first argues that the Aultman Defendants' Motion should be denied as premature because the pleadings in this case are not closed[13] and Fed. R. Civ. P. 12(c) requires that the pleadings be closed before a party may move for judgment on the pleadings. Doc. 101, p. 2.

When a case involves "multiple defendants, all defendants must file an answer before a Rule 12(c) motion can be filed." *Horen v. Board of Educ. of Toledo City School Dist.*, 594 F.Supp.2d 833, 840 (N.D. Ohio 2009).  However, a prematurely filed Fed. R. Civ. P. 12(c) motion may be construed as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) if "the issues raised in the motion were sufficiently raised in the moving defendant's answer as affirmative defenses." *Ortiz v. Holmes*, 157 F.Supp.3d 692, 695 (N.D. Ohio 2016); *Horen*, 594 F.Supp.2d at 840-841 (construing a "premature, pre-answer Rule 12(c) motion as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)[]"); *Collins v. Muskegon County Sherriff's Dept.*, 2007 WL 426586, * 5 (W.D. Mich. Feb. 1, 2007) ("[I]t is not improper to treat a premature, pre-answer Rule 12(c) motion as a motion to dismiss under Rule 12(b)(6)."); (*Lohner v. Lake County, Tennessee*, 2017 WL 3160569, * 2 (W.D. Tenn. July 25, 2017) (indicating that "district courts within our circuit have expressed a willingness to construe motions under 12(b)(6) as motions under 12(c) and vice versa[]").  The standard of review is the same for motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) and motions to dismiss under Fed. R. Civ. P. 12(b)(6).  *Ortiz*, 157 F.Supp.3d at 696; *Horen*, 594 F.Supp.2d at

---

[13] While the Aultman Defendants have filed answers to the Complaint, the ICU Defendants have not and Plaintiff has not filed an answer to the Counterclaims filed by the Aultman Defendants.

841.  Thus, a party will not be prejudiced if a court treats a Fed. R. Civ. P. 12(c) motion as a Fed. R. Civ. P. 12(b)(6) motion.  *Horen*, 594 F.Supp.2d at 841.

In their answers, the Aultman Defendants asserted affirmative defenses based on the grounds they assert in their Motion: the doctrine of res judicata, violation of Ohio Civ. R. 10(D)(2), the statute of limitations, and/or legal insufficiency of the claims.  *See e.g.*, Doc. 25, pp. 29, 30 ¶¶ 289, 290, 302, 303, 308; Doc. 27, pp. 31, 32, 33 ¶¶ 284, 289, 290, 294, 301, 307. Compare with Doc. 93, p. 2.  In light of the foregoing, even though the pleadings may not be closed, the undersigned finds it appropriate to convert the Aultman Defendants' Fed. R. Civ. P. 12(c) motion to a Fed. R. Civ. P. 12(b) motion to dismiss.

### B.     Standard of review

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."  *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)(citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)(internal citations omitted).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Fritz*, 592 F.3d at 722 (quoting *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir.2007)).

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The Court must accept all well-pleaded factual

allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Id*. (internal citations omitted). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (internal quotations omitted). "When considering a motion to dismiss on the ground of a statute of limitations, the Court must decide whether 'it is apparent from the face of the complaint that the limit for bringing the claim[s] has passed.'" *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F.Supp.3d 734, 761 (2019) (quoting *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (noting alteration in original)).

### C.    All claims asserted against Defendant AHF, with the exception of Count IX, should be dismissed based on res judicata

The Aultman Defendants argue that all claims asserted against all of them, with the exception of Count IX (Denial of Court and Abuse of Process),[14] could have been brought in the declaratory judgment action ("DEC action") filed against AHF in September 2015 in the Stark County Court of Common Pleas, Case No. 2015CV02003, and therefore should be dismissed based on res judicata.  Although AultCare and Aultman Hospital were not parties to that action, Defendants contend that res judicata applies to the claims against them by reason of Plaintiff's allegations indicating that they are in privity with AHF, which was a party. Doc. 93, pp. 2-5, Doc. 105, pp. 1-4.   The DEC action is referenced in Plaintiff's Complaint and a copy the complaint in the DEC action is attached to the Aultman Defendants' answers.  Doc. 1, p. 29, ¶ 125, Doc. 25-3, Doc. 27-2.

---

[14] Defendants do not seek dismissal of Count IX based on res judicata because they state that the claim raised therein pertaining to Plaintiff's request for an accounting of protected health information disclosures arose after the declaratory judgment action was filed.  Doc. 93, p. 4.

### The State Court DEC action

The DEC action was filed by Steven A. Armatas against Aultman Health Foundation.[15] Doc. 25-3, Doc. 27-2.  Steven sought an "opinion about Professional Conduct Rule 4.2 and his rights to interview certain [n]on-management Aultman employees[]" regarding matters pertaining to his father's hospitalization at Aultman Hospital from October 11, 2014, to December 31, 2014.  *Armatas v. Aultman Health Found.*, 2016 WL 5940866, * 1 (Ohio App. Ct. Oct. 11, 2016); Doc. 25-3, pp. 1-2, Doc. 27-2, pp. 1-2.  He also sought injunctive relief, punitive damages, attorney fees, and costs.  *Id.*  During the course of the DEC action, Steven sought and obtained an order requiring AHF to provide him copies of his father's medical records.  *Id.* at * 2.  Ultimately, the trial court granted AHF's motion to dismiss filed pursuant to Civ. R. 12(B)(6), finding that there was no "justiciable controversy in [the] matter so as to permit a declaratory judgment."  *Id.*

Steven appealed and, on October 11, 2016, the Fifth District Court of Appeals, applying the standard for review of an order on a Rule 12(B)(6) motion, affirmed the trial court.  *Armatas*, 2016 WL 5940866.  The court found that Steven's "fear of possible future litigation [was] not sufficient to create a real justiciable case or controversy and that appellant [was] seeking an advisory opinion."  *Armatas*, 2016 WL 5940866, * 4.  Since the declaratory judgment action was dismissed, the court of appeals concluded that Steven's secondary damage claims for punitive damages, costs and/or attorney fees also failed.  *Id.*

---

[15] Steven also named a second defendant, Attorney Richard S. Milligan, in the DEC action. On November 23, 2015, the trial court granted Attorney Milligan's motion to dismiss, "finding that he had acted in good faith on behalf of his client(s) and was therefore immune from action." *Armatas*, 2016 WL 5940866, * 2. That ruling was upheld by the state court of appeals. *Id.* at * 6.

**Res judicata under Ohio law**

When a court considers "[t]he preclusive effect of a state court judgment in a subsequent federal lawsuit[,]" a federal court is to "refer to the preclusion law of the State in which the judgment was rendered[,]" not the federal court's own res judicata rules. *Marrese v. American Academy of Orthopedic Surgeons*, 470 U.S. 373, 379-380 (1985); *Snyder v. All-Pak*, 2006 WL 2993420, * (N.D. Ohio Oct. 29, 2006) (relying on *Marrese* when applying Ohio law to determine preclusive effect of a prior Ohio state court judgment). Thus, Ohio's res judicata law applies in determining whether the Ohio state court DEC action judgment has preclusive effect in this federal case.

The Ohio Supreme Court has stated the following regarding claim preclusion in Ohio: "[A] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995); *see also Snyder*, 2006 WL 2993420, * 2 (quoting *Grava*). There are four elements to claim preclusion in Ohio: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *In re Fordu*, 201 F.3d 693, 703-704 (6th Cir. 1999).

**Res judicata bars Plaintiff's claims against AHF but not his claims against Aultman Hospital or AultCare**

The Aultman Defendants argue that res judicata applies in this case because the DEC action, which was dismissed by the state court and was an adjudication on the merits, shares a

common factual background and raised similar allegations to those raised in this case.  Doc. 93, pp. 3-4, Doc. 105, p. 1.  Further, they argue that the claims raised against them in this case, with the exception of Count IX, could have been litigated in the DEC action, which included not only a request for declaratory judgment but also sought punitive damages, attorney fees and costs. Doc. 93, pp. 3-4, Doc. 105, p. 2.  The Aultman Defendants contend that, while the DEC action was not filed against Defendants Aultman Hospital and AultCare, the Complaint alleges they are in privity with AHF and therefore res judicata bars also the claims made against them.  Doc. 93, pp. 3-4.

Plaintiff argues res judicata should not bar the claims because the Aultman Defendants have not established identity of claims between the first and second action; a declaratory judgment action cannot be a foundation for a res judicata defense; there is no privity between AHF and Aultman Hospital and AultCare; and there was no adjudication on the merits in the DEC action.  Doc. 99, pp. 4-7.

For the reasons discussed below, the undersigned recommends that the Court GRANT the Aultman Defendants' Motion on the grounds of res judicata as to all Counts except Count IX but only as to Defendant AHF.

### First Element

The first element required for claim preclusion – a prior final, valid decision on the merits by a court of competent jurisdiction – is satisfied in this case.  Plaintiff contends that the dismissal was not an adjudication on the merits but rather a dismissal based on lack of jurisdiction.  Doc. 99, pp. 6-7.  However, when the state appellate court affirmed the trial court's dismissal of the DEC action it applied Ohio Civ. R. 12(B)(6) and concluded that Steven's "fear of possible future litigation [was] not sufficient to create a real justiciable case or controversy and that [Steven] [was] seeking an advisory opinion."  *Armatas*, 2016 WL 5940866, * 2-4.

Thus, the court concluded that the DEC action failed to state a claim for relief and failed as a matter of law since there was no justiciable issue or actual controversy and the complaint merely sought an advisory opinion.  *Id.; see also Marek v. Navient Corp.*, 2017 WL 32943 (N.D. Ohio Jan. 1, 2017), *adopting report and recommendation*, 2016 WL 11265709 (N.D. Ohio Dec. 6, 2016) (*Marek I*) (granting a defendant's motion to dismiss a declaratory judgment action for failure to state a claim).

The Supreme Court of Ohio has explained that "a dismissal grounded on a complaint's failure to state a claim upon which relief can be granted constitutes a judgment that is an adjudication on the merits." *State ex. rel. Acres v. Ohio Dep't of Job & Family Servs.*, 123 Ohio St.3d 54, 58 (2009) (internal quotations omitted).  In *State ex. rel. Acres*, the Supreme Court found that a prior dismissal of a declaratory judgment based on failure to state a claim for relief barred a subsequent refiling.  *Id.*  Similarly, in *Marek v. Navient Corp.*, 2017 WL 2881606, * 4 (N.D. Ohio Jul. 6, 2017) (*Marek II*), the district court concluded that a prior dismissal of a declaratory judgment action for failure to state a claim could bar a subsequent action.

Plaintiff has not shown that the state court's dismissal of his DEC action was anything other than an adjudication on the merits.  Accordingly, the first element of claim preclusion is satisfied.

<u>Second Element</u>

The second element of claim preclusion – that the second action involves the same parties, or their privies, as the first – is satisfied as to Defendant AHF because there is no dispute that Plaintiff and Defendant AHF were parties to the DEC action.  The second element is not satisfied as to Defendants Aultman Hospital and AultCare, which were not parties to that case.

The Aultman Defendants argue that Aultman Hospital and AultCare are entitled to dismissal of the claims against them based on res judicata because the Complaint contains allegations of a unity of interest among the three Aultman Defendants sufficient to establish privity.  Doc. 93, pp. 4-5.  In particular, they cite to the following paragraphs in Plaintiff's Complaint - ¶¶ 7, 179, 201, 216, 225, 249, 265, 274.  Doc. 93, p. 5.  Plaintiff counters this argument by pointing out that the Aultman Defendants in their Answers deny the very allegations that they now rely upon to establish privity.  Doc. 99, p. 6.  For example, the Aultman Defendants deny that "AHF exercises dominion and control over the management and operation of Aultman Hospital and AultCare[.]"  Doc. 25, p. 2, ¶ 7, Doc. 27, p. 2, ¶ 7.  The Aultman Defendants deny that "AultCare is controlled by AHF."  Doc. 25, p. 29, ¶ 179, Doc. 27, p. 21, ¶ 179.  Defendants AHF and Aultman Hospital deny that "AHF managed and controlled Aultman."  Doc. 27, p. 25, ¶ 216.  In their reply brief, the Aultman Defendants do not dispute that their answers deny the relevant allegations of the Complaint but they argue that their denials should not preclude a finding of privity because the Court's review on the Motion is limited to the Complaint and the exhibits attached to it.  Doc. 105, p. 3.  Thus, they wish to contradict for purposes of the Motion the allegations they have made in their pleadings.

As discussed above, a premature motion for judgment on the pleadings may be treated as a 12(b)(6) motion if the issues relied on in the motion were sufficiently raised in the moving party's answer.  See *Ortiz v. Holmes*, 157 F.Supp.3d 692, 695 (N.D. Ohio 2016).  Here, the Aultman Defendants raised the defense of res judicata in their answers but denied the privity allegations on which they now rely to argue that res judicata bars the claims against Aultman Hospital and AultCare.  Accordingly, privity was not sufficiently raised in the answers – indeed, it was denied – and thus it cannot be considered when treating the Motion as a 12(b)(6) motion.

21

Moreover, there is clearly a factual dispute as to whether Aultman Hospital and AultCare are in privity with AHF and that factual dispute cannot be resolved at this early stage in the litigation.

The undersigned finds that, in light of the Aultman Defendants' emphatic denials of the very allegations on which they base their privity argument, that argument fails. Accordingly, the second element is satisfied as to Defendant AHF but it is not satisfied as to Aultman Hospital or AultCare.

### Third Element

The third element required for claim preclusion – the second action raises claims that were or could have been litigated in the first action – is satisfied as to all claims raised against Defendant AHF, except Count IX, which Defendants do not seek to have dismissed based on res judicata.

A review of the DEC action and the Complaint in this matter demonstrates that new claims are raised in the Complaint that were not raised in the DEC action. Plaintiff contends that the new claims could not have been raised because the DEC action was a necessary step to obtaining his father's medical records which were required in order for him to obtain an affidavit of merit needed to file his medical malpractice and wrongful death claims. Doc. 99, p. 4. However, even though Plaintiff did not have all of his father's medical records at the time he filed the DEC action, he could have raised in the first action the claims he now raises. Ohio Civ. R 10(D)(2) requires an affidavit of merit when medical claims under O.R.C. § 2905.113 are raised[16] but it also provides that a plaintiff:

> may file a motion to extend the period of time to file an affidavit of merit. The motion shall be filed by the plaintiff with the complaint. For good cause shown and in accordance with division (c) of this rule, the court shall grant the plaintiff a

---

[16] As discussed more fully below, in *Gallivan v. United States*, --- F.3d ---, 2019 WL 579 WL 5793013 (6th Cir. 2019), the Sixth Circuit recently decided that Ohio Civ. R. 10(D)(2)'s affidavit of merit requirement does not apply in federal court.

> reasonable period of time to file an affidavit of merit, not to exceed ninety days,
> except the time may be extended beyond ninety days if the court determines that a
> defendant or non-party has failed to cooperate with discovery or that other
> circumstances warrant extension.

Ohio Civ. R. 10(D)(2)(b). Additionally, Ohio Civ. R. 10(D) provides that "[a]ny dismissal for

the failure to comply with this rule shall operate as a failure otherwise than on the merits." Ohio

Civ. R. 10(D)(2)(d); *see also Troyer v. Janis*, 132 Ohio St.3d 229, 232 (2012) (holding "that a

dismissal of a complaint for failure to attach the affidavit of merit required by Civ. R. (10)(D)(2)

is an adjudication otherwise than on the merits and is a dismissal without prejudice by operation

of law[]"). Thus, Plaintiff could have, but chose not to, raise his medical claims in the first

action.

Plaintiff also argues that a declaratory judgment action is not considered a claim or cause

of action under Ohio law. Doc. 99, pp. 4-5. However, as discussed above, courts in Ohio have

applied res judicata where a first case involved a declaratory judgment action. *See State ex. rel.*

*Acres*, 123 Ohio St.3d 54. Further, while "there is a declaratory judgments exception to the

'could have been litigated' prong of the third element[,]" *Marek II*, 2017 WL 2881606, * 4, it

does not apply in this case. The exception provides that, "Unlike other judgments . . . a

declaratory judgment determines only what it actually decides and does not preclude other

claims that might have been advanced. Consequently, for a previous declaratory judgment, res

judicata precludes only claims that were *actually decided*." *Id.* (quoting *State ex. rel. Coles v.*

*Granville*, 877 N.E.2d 968, 975 (Ohio 2007)) (emphasis in original) (internal quotations

omitted). As discussed above, there was no declaratory judgment rendered in the DEC action

filed in Stark County Court of Common Pleas. The action was dismissed for failure to state a

claim. Thus, since there was no declaratory judgment, the declaratory judgment exception to res

judicata does not apply here. *See Marek II*, 2017 WL 2881606, * 4 (declining to apply the

declaratory judgment exception to the third element prong where a prior declaratory judgment action had been dismissed for failure to state a claim and no declaratory judgment had been issued as a remedy).

For the reasons explained, the third element is satisfied as to all claims raised against Defendant AHF, except Count IX, which AHF does not contend is barred by res judicata.

*Fourth Element*

The fourth element – the second action arises out of the transaction or occurrence that was the subject matter of the previous action – is satisfied as to all claims raised against Defendant AHF, except Count IX, which Defendant AHF does not seek to have dismissed based on res judicata.

Plaintiff contends that there is no identity of claims because there was only one issue before the court in the DEC action, i.e., Plaintiff sought a declaration that "Prof. Conduct R. 4.2 did *not* apply to a son attending to the administrative matters of his very-recently deceased father, simply because the son held a law degree."  Doc. 99, p. 4 (emphasis in original).  He argues that the one question presented in the DEC action should be compared and contrasted with the numerous claims raised in the action before this Court.  *Id.*

Plaintiff's DEC action also included a request for injunctive relief, punitive damages, attorney fees and costs.  Doc. 27-2.  Thus, Steven was not seeking only a declaratory judgment. Indeed, in the course of the DEC action, Steven sought and obtained an order requiring the release of medical records.  Furthermore, a review of the Complaint in the DEC action and the Complaint in this case demonstrates that the claims that Plaintiff makes in this case do arise out of the transaction or occurrence that was the subject matter of the first action.  The DEC action arose out of the hospitalization of Steven's father at Aultman Hospital from October 11, 2014, to

December 31, 2014.  Doc. 27-2, p. 2.  The Complaint in the DEC action contained many of the same allegations set forth in the Complaint in this case relating to: facts leading to Alexander's hospitalization, treatment of Alexander while hospitalized, treatment of Steven and his mother while Alexander was hospitalized, Plaintiff's attempts to file grievances regarding the treatment of his father as well as the treatment of Steven and his mother.  Doc.1, Doc. 27-2.  The Complaint in the DEC action also alleged, as does the Complaint in this case, that Defendants, in order to cause the statute of limitations to run, were denying Plaintiff access to Alexander's medical records and to hospital personnel who could respond to questions about Steven's grievances.  *See e.g.*, Doc. Doc. 1, pp. 60, 61, ¶¶ 275, 279, Doc. 27-2, pp. 11-12, ¶ 39.  In brief, both the DEC action and this case arise out of, and pertain to, the circumstances surrounding Alexander's hospitalization at Aultman Hospital from October 11, 2014, to December 31, 2014. Doc. 1.

While the relief Plaintiff sought in the DEC action was different than the relief he seeks in the present case, that does not alter the fact that the two cases arise out of the same transaction or occurrence; thus, the fourth element is satisfied as to the claims against Defendant AHF.

In light of the foregoing, the undersigned recommends that the Motion be GRANTED with respect to Defendant AHF on the basis of res judicata as to all Counts except Count IX.

### D.     Plaintiff's medical claims against Defendants Aultman and AHF should not be dismissed for failure to file an affidavit of merit under Ohio Civ. R. 10(D)(2)

Defendants Aultman and AHF seek dismissal of the medical claims asserted against them for failure to file an affidavit of merit as required by Ohio Civ. R. 10(10)(D)(2).  Doc. 93, pp. 5-6. As discussed below, the Motion should be DENIED with respect to the affidavit of merit

issue because the Sixth Circuit has made clear that medical claims filed in federal court are not subject to dismissal for that reason.

Ohio Civ. R. 10(D)(2) states that "a complaint that contains a medical claim . . . as defined in R.C. 2305.113, shall be accompanied by one or more affidavits of merit relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability."  Ohio Civ. R. 10(D)(2)(a).  Aultman and AHF argue that the affidavit of merit applies in federal court and that the Complaint herein is insufficient because it does not include an opinion that Aultman or AHF breached the standard of care and that their negligence proximately harmed the decedent.  Doc. 93, pp. 5-6.

As explained in the Report and Recommendation issued in connection with the ICU Defendants' Motion to Dismiss, at the time the Aultman Defendants filed their Motion, the question whether Ohio's affidavit of merit requirement applied in federal court was pending before the Sixth Circuit in *Gallivan v. United States*, Sixth Circuit Court of Appeals Docket # 18-3874.  *See* Doc. 24, p. 14, n. 6.  On November 7, 2019, the Sixth Circuit decided the issue in a published decision, *Gallivan v. United States*, --- F.3d ---, 2019 WL 579 WL 5793013 (6th Cir. 2019), concluding that Ohio Civ. R. 10(D)(2)'s affidavit of merit requirement does not apply in federal court.  In light of the Sixth Circuit's ruling in *Gallivan*, the undersigned recommends that the Court DENY Defendants' Motion insofar as it seeks dismissal of the medical claims asserted against Aultman Hospital and AHF for failure to satisfy the affidavit of merit requirements contained in Ohio Civ. R. 10(D)(2).

### E.  Count I – statute of limitations analysis

Count I – Medical Malpractice – is asserted against Defendants Aultman and AHF.  Doc. 1, pp. 31-33, ¶¶ 132-143.  Aultman and AHF argue that Count I should be dismissed because it is

barred by the one-year statute of limitations that applies to medical claims under O.R.C. § 2305.113.  That statute permits an extension of the limitations period of up to 180 days if, prior to the expiration of the one-year period, a claimant who has a medical claim provides notice (known as a "180-day letter") to the individual who is the subject of the claim that the claimant is considering bringing an action upon the claim. O.R.C. § 2305.113(B).[17]

Plaintiff does not dispute that Count I is a "medical claim" under Ohio law.  Alexander's death occurred on December 31, 2014.  Doc. 1, p. 27, ¶ 114.  Plaintiff asserts that he sent 180-day letters to Defendants on December 2, 2015.  Doc. 99, p. 9.  Thus, under O.R.C. § 2305.113, Plaintiff's medical claims were required to be commenced not later May 30, 2016, 180 days from Plaintiff's sending of the 180-day letters.  However, Plaintiff did not file his complaint in the Stark County Court of Common Pleas until December 28, 2016, many months after the statute of limitations had run.  The date Plaintiff filed his state court action, not the later date on the case was re-filed in this Court, is the operative date for determining whether Plaintiffs timely filed their Complaint.[18]

### Equitable Tolling

Plaintiff does not dispute that the claims asserted in Count I were not timely filed under O.R.C. 2305.113.  Instead, Plaintiff argues that equitable tolling should apply and Count I should not be barred by the statute of limitations for that reason.

When a party asserts that he should be entitled to tolling of the statute of limitations and when the claim at issue arises under state law, state, rather than federal, tolling principles apply.

---

[17] In that event, the limitations period is extended to 180 days after the notice is given.  O.R.C. § 2305.113(B).

[18] As noted above, this case is a re-filing of the previously filed Common Pleas Court case, which Plaintiffs dismissed voluntarily.  Plaintiff claims the benefit of the Ohio savings statute, O.R.C. §2305.19.  Doc. 1, p. 4, ¶ 4. That statute tolls the running of the statute of limitations for a one-year period after a case is dismissed other than on the merits but it applies only where the first filed action was timely commenced.  *See e.g., Moore v. Dept. of Rehab. & Corr.*, 2011 WL 1225466, * 5 (Ohio App. Ct. Mar. 31, 2011).

In *Roberson v. Macnicol*, 698 Fed. Appx. 248, 250 (6th Cir. June 19, 2017), the Ohio Tenth

District Court of Appeals explained, "[e]quitable tolling is only available in compelling cases

which justify a departure from established procedure . . . [and therefore] equitable tolling is to be

applied sparingly and only in exceptional circumstances." *Id.* (internal citations and quotations

omitted). *See also McCualsky v. Appalachian Behavioral Healthcare*, 100 N.E.3d 1049, 1055

(2017) ("A litigant seeking equitable tolling must demonstrate that he or she diligently pursued

his or her rights, but some extraordinary circumstance stood in his or her way and prevented

timely action.")(internal citations omitted).  To assess whether equitable tolling is warranted,

"courts generally consider: (1) lack of actual notice of the filing requirement, (2) lack of

constructive notice of the filing requirement, (3) diligence in pursuing one's rights, (4) absence

of prejudice to the defendant, and (5) a plaintiff's reasonableness in remaining ignorant of the

filing requirements." *Moore v. Ohio Dept. of Rehab. & Corr.*, 2011 WL 1225466, * 6 (Ohio

App. Ct. Mar. 31, 2011).

Plaintiff argues that he diligently pursued his rights by "sending letters to AHF's in-house

and outside counsel; filing his [DEC action] on September 29, 2015; petitioning the trial court to

order AHF to release such records pursuant to Loc. R. 11.01 . . . and mailing out '180-day

letters' to extend the applicable statute of limitations."  Doc. 99, p. 9 (footnote omitted).  Plaintiff

argues that he did not file his complaint within one year and then petition the court for extensions

of time to file an affidavit of merit under Ohio Civ. R. 10(D)(2) because, while a 90-day

extension may be allowed, the rule does not envision endless extensions of time and, since he did

not obtain his father's medical records until June 10, 2016, he would have certainly required

numerous extensions.  Doc. 99, pp. 9-10.  He also argues that, had the trial court denied his

requests for extensions, his case would have been dismissed with prejudice and his medical malpractice claim would have been forever barred.  Doc. 99, p. 10.

For the reasons explained below, the undersigned finds that Plaintiff has not demonstrated that equitable tolling of the statute of limitations is warranted.

Plaintiff Steven Armatas is an Ohio attorney who brings this action individually and on behalf of the other Plaintiffs.  Plaintiff indicates that he ultimately obtained the medical records on June 10, 2016.  Doc. 99, p. 9.  Yet, he offers no reason for waiting over six months, until December 28, 2016, to file his state court complaint.

Furthermore, Plaintiff acknowledges that a plaintiff may seek an extension of time under Ohio Civ. R. 10(D)(2) to file an affidavit of merit but he did not seek such an extension before the statute of limitations expired.  Doc. 99, p. 9.  Plaintiff's explanation for not seeking an extension of time is that, while a 90-day extension may be allowed, the rule does not envision endless extensions.  That explanation is unpersuasive.  Ohio Civ. R. 10(D)(2) provides that the time to file an affidavit of merit may be extended beyond 90 days "if the court determines that a defendant or non-party has failed to cooperate with discovery or that other circumstances warrant extension."  *See* Ohio Civ. R. 10(D)(2)(b).  Thus, not only could Plaintiff have requested an initial 90-day extension, he also could have sought extensions beyond 90 days.   Plaintiff's failure to seek <u>any</u> extension of time to file an affidavit of merit before the statute of limitations expired denotes a lack of due diligence.

Plaintiff's additional contention that, had a request for extension been denied, his case would have been dismissed <u>with prejudice</u> is refuted by the plain text of Ohio Civ. R. 10.  The rule provides in part, "Any dismissal for the failure to comply with this rule *shall operate as a failure otherwise than on the merits*."  Ohio Civ. R. 10(D)(2)(d) (emphasis supplied).  *See also*

*Troyer v. Janis*, 132 Ohio St.3d 229, 232 (2012) (holding "that a dismissal of a complaint for failure to attach the affidavit of merit required by Civ. R. (10)(D)(2) is an adjudication otherwise on the merits and is a dismissal without prejudice by operation of law[]").  Thus, if Plaintiff had timely filed his complaint but failed to comply with Ohio Civ. R. 10(D), dismissal would have been otherwise than on the merits and Plaintiff would have had an opportunity to refile under Ohio's savings statute.  Thus, Plaintiff's assertion that his medical malpractice action would have been <u>forever barred</u> is simply wrong.

Moreover, as noted above, "equitable tolling is to be applied sparingly and only in exceptional circumstances." *McCualsky*, 100 N.E.3d at 1055.  Here, since Plaintiff did not avail himself of available avenues for seeking extensions of time to file an affidavit of merit before the limitations period expired, he cannot show that it was the specific actions of defendants that prevented him from timely filing.

For the reasons explained herein, the undersigned does not find that exceptional circumstances exist that would warrant the application of equitable tolling.  Thus, the undersigned recommends that the Court GRANT the Aultman Defendants' Motion as to Defendants AHF and Aultman Hospital on Count I because that claim against those Defendants is barred by the statute of limitations.

> **F.     Counts III (Breach of Contract), IV (Violations of the Federal Medicare Advantage Act and Medicare Advantage Act Regulations), V (Negligent Hiring and Supervision), VI(Fraud), VII (IIED), VIII (Interference with Business Relations), IX (Denial of Court and Abuse of Process), XI (Civil Conspiracy), and XII (Violation of RICO) – statute of limitations analysis**

The Aultman Defendants argue that Counts III (Breach of Contract), Count IV (Violations of the Federal Medicare Advantage Act and Medicare Advantage Act Regulations), V (Negligent Hiring and Supervision), VI(Fraud), VII (IIED), VIII (Interference with Business

Relations), IX (Denial of Court and Abuse of Process), XI (Civil Conspiracy), and XII (Violation of RICO) should also be dismissed because they are "medical claims" under O.R.C. § 2305.113 and therefore are barred by the statute of limitations contained in that statute.  Doc. 93, pp. 7-10, Doc. 105, pp. 5-6.  In response, Plaintiff contends that Defendants' arguments are unsupported by case law and the claims are not "medical claims" and therefore are not subject to the statute of limitations for medical claims contained in O.R.C. § 2305.113.  Doc. 99, pp. 10-11.

To determine the applicable statute of limitations, "courts must look to the actual nature or subject matter of the case, rather than the form in which the action is pleaded." *Freeman v. Durrani*, 2019-Ohio-3643, 2019 Ohio App. LEXIS 3732, * 7 (Ohio App. Ct. Sept. 11, 2019) (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984)).

O.R.C. § 2305.113 states:

> "Medical claim" means any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person.

O.R.C. § 2305.113(E)(3).  The statute also provides that "medical claim" includes "[d]erivative claims for relief that arise from the medical diagnosis, care, or treatment of a person[.]"  O.R.C. § 2305.113(E)(3)(a).   And O.R.C. § 2305.113(E)(3)(c) includes in the definition of "medical claims" "[c]laims that arise out of the medical diagnosis, care, or treatment of any person" and "result[] from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care or treatment."  O.R.C. § 2305.113(E)(3)(c)(ii)

Thus, while a claim is not pleaded as a medical malpractice claim, it may nevertheless be subject to the statute of limitations contained in O.R.C. § 2305.113 if it is a "medical claim" under that statute.

### 1. Counts V, VI, VII and VIII

<u>**Count V**</u>

In Count V, Plaintiff alleges that the Aultman Defendants are liable for the negligent hiring and supervision of medical providers who were employed and/or engaged as employees, agents or independent contractors to provide neurological and other medical care and treatment to patients at Aultman Hospital, including Alexander.  Doc. 1, pp. 44-47, ¶¶ 202-216.  More particularly, Plaintiff alleges that, "[a]s a direct and proximate result of Defendant Aultman's termination of the NeuroCare Group with its 10+ neurologists and subsequent negligent hiring, retention, and supervision of Doctors El-Nachef and Juopperi to replace them, Alexander suffered (a) physical pain and discomfort, (2) increased risk of harm, (c) the loss of chance of recovery or survival, and (d) untimely death on December 31, 2014."  Doc. 1, p. 46, ¶ 214.

O.R.C. § 2305.113(E)(3)(c) includes in the definition of "medical claims" "[c]laims that arise out of the medical diagnosis, care, or treatment of any person" and "result[] from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care or treatment."  O.R.C. § 2305.113(E)(3)(c)(ii); *see also Cross v. Marietta Opco, LLC.*, 2018 WL 5650013, * 2 (S.D. Ohio Oct. 31, 2018) (finding that "[m]edical claims include claims that result from the acts or omissions in providing medical care and claims that result from the hiring, training, supervision, retention, or termination of caregivers providing medical treatment.")

Considering the foregoing, the undersigned finds that the negligent hiring and supervision claim is a "medical claim" under O.R.C. § 2305.113(E)(3)(c) and therefore recommends that the

Court GRANT the Aultman Defendants' Motion as to Count V because it is barred by the statute of limitations contained in O.R.C. § 2305.113.

### Counts VI, Count VII, and Count VIII

Preliminarily, the undersigned notes that Count VI (Fraud) contains two distinct claims of fraud. The first relates to a statement allegedly made by Dr. Nashawati indicating that, if Steven and his mother did not remove Alexander from life support, Aultman Hospital would commence a lawsuit to remove them as caretakers for Alexander and replace them with a guardian *ad litem*. Doc. 1, pp. 47-49, ¶¶ 219-220, 223-224, 226 (hereinafter "Count VI – Fraud (Nashawati)"). The second relates to alleged misstatements made by AultCare regarding its investigation into Plaintiff's grievance. Doc. 1, pp. 47-49, ¶¶ 221-223, 225-226 (hereinafter "Count VI – Fraud (AultCare)").

#### *Counts VI – Fraud (Nashawati), Count VII, and Count VIII*

For the reasons explained in the Report and Recommendation issued by the undersigned relative to the ICU Defendants' Motion to Dismiss (Doc. 117), the undersigned recommends that the Court GRANT the Aultman Defendants' Motion as to Count VI – Fraud (Nashawati), Count VII (IIED), and Count VIII (Interference with Business Relations), because the claims are "medical claims" and therefore barred by the statute of limitations contained in O.R.C. § 2305.113.

#### *Count VI – Fraud (AultCare)*

Count VI – Fraud (AultCare) alleges that AultCare made misrepresentations in a January 9, 2015, letter to Plaintiff regarding its investigation into Plaintiff's grievance. Doc. 1, p. 48, ¶ 221. AultCare was the insurance provider. At this stage of the proceedings, the Aultman Defendants have not shown how the alleged misrepresentation made by an insurance provider

after Alexander's death arose out of the medical diagnosis, care or treatment of Alexander. Accordingly, the undersigned recommends that the Court DENY the Aultman Defendants' Motion as to Count VI – Fraud (AultCare) because the Aultman Defendants have not demonstrated it is a "medical claim" under O.R.C. § 2305.113(E).  The undersigned addresses the Aultman Defendants' alternative ground for dismissal of Count VI – Fraud (AultCare), i.e., that the claim fails as a matter of law, below in Section IV(G).

### 2.   Counts III, IV, IX, XI, and XII

The Aultman Defendants argue that Counts III, IX, XI, and XII, which assert breach of contract and allegations that the Aultman Defendants acted in various ways to avoid liability are "medical claims" subject to the one-year statute of limitations contained in O.R.C. § 2305.113 because the allegation of negligence forms the basis for the claims.  Doc. 93, pp. 9-10.  With respect to Count IV, they argue that because the grievances, which Plaintiff alleges were wrongfully handled by the Aultman Defendants, concern allegations of negligent medical care and emotional distress they are "medical claims."  Doc. 93, p. 10.

The undersigned finds the Aultman Defendants' arguments that these claims should be dismissed based on the statute of limitations to be vague and conclusory.  The Aultman Defendants have not demonstrated that the claims are "medical claims" subject to the one-year "medical claims" statute of limitations.  Accordingly, the undersigned recommends that the Court DENY the Aultman Defendants' Motion to the extent it seeks dismissal of Counts III, IV, IX, XI, and XII on the basis of the statute of limitations.  The undersigned addresses the Aultman Defendants' alternative grounds for dismissal of Counts III, IV, IX, XI, and XII, i.e., that the claims fail as a matter of law, below in Section IV(G).

### G.   Counts III (Breach of Contract), Count IV (Violations of the Federal Medicare Advantage Act and Medicare Advantage Act

Regulations), VI – Fraud (AultCare), Count IX (Denial of
Court and Abuse of Process), Count XI (Civil Conspiracy), and
Count XII (Violation of RICO) – failure to state a claim
analysis

### 1. Counts III and IV

The parties' arguments relative to Counts III and IV overlap and will therefore be

discussed together.

Count III alleges that AultCare breached the provisions of the AultCare MAP Contract.[19]

Count IV alleges the Aultman Defendants committed violations of the Federal Medicare

Advantage Act and Medicare Advantage Act Regulations.[20]  The Aultman Defendants contend

that Count III fails as a matter of law because federal law does not allow for a right of action

against a Medicare insurer on claims arising under the Medicare Act.  Doc. 93, pp. 11-13.  The

Aultman Defendants contend that Count IV fails as a matter of law because there is no private

right of action based on alleged violations of the Medicare regulations.  Doc. 93, pp. 13-15.

---

[19] The Complaint alleges that the Contract provides that AultCare will at all times treat the enrollee with fairness
and respect; that the plan will protect the enrollee from discrimination or unfair treatment based on age or evidence
of insurability; that the enrollee cannot be discriminated against based on whether or not the enrollee has signed an
advance directive; the enrollee has the right to receive a summary of information about appeals and complaints filed
against the plan; the enrollee will be given notice regarding an enrollee's Medicare rights within two days of
admission; the enrollee has the right to file complaints regarding the quality of medical care and receive a response
to a complaint; and an enrollee has a right to look at and receive copies of medical records.  Doc. 1, pp. 35-39, ¶¶
156-179.

[20] The alleged violations included refusing to accept Plaintiff's grievance on or about November 24, 2014; refusing
to meet with Plaintiff on or about February 20, 2015, to discuss the results of their investigation; refusing to accept a
grievance on the basis that Alexander had not signed a power of attorney; refusing to meet with Plaintiff to discuss
the results of their investigation on the basis that Plaintiff had not presented evidence that he was the duly appointed
administrator or executor for Alexander; stating they could not discuss the results of their investigation with Plaintiff
because it was protected by Ohio's peer review statute; not providing a timely and meaningful response to Plaintiff's
grievance; and not promptly providing a report of the grievances and appeals as requested.  Doc. 1, pp. 39-44, ¶¶
180-201.

Plaintiff argues that Defendants' argument that there is no private right of action under the Medicare Act is incorrect and, even if correct, that does not foreclose the breach of contract claim in Count III.  Doc. 99, pp. 11-17.

A plaintiff bears "the burden of establishing that Congress intended to create a private remedy under the Medicaid and Medicare Acts."  *Brogdon ex rel. Cline v. National Healthcare Corp.*, 103 F.Supp.2d 1322, 1330 (N.D. GA 2000) (citing *Suter v. Artist M.*, 503 U.S. 347, 363-364 (1992)).  Plaintiff does not cite to an express statutory authorization of a private right of action to enforce compliance with the Medicare Act.  To determine whether there is an implied private right of action, a court examines: "(1) whether the statutes were created for the plaintiffs' special benefit, (2) whether there is evidence of legislative intent to create a private remedy, (3) whether a private remedy would be consistent with legislative purposes, and (4) whether the area is one traditionally relegated to the states."  *Id.*

While the Medicare Act can be said to have been enacted to benefit an enrollee like Alexander, "[t]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person."  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979).  "The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action."  *Touche Ross*, 442 U.S. at 576.  Here, Plaintiff has not demonstrated that Congress intended expressly or by implication to create a private cause of action to enforce an enrollee's rights as they relate to filing grievances, such as Plaintiff filed, against a MAP.

Medicare regulations distinguish between an "organization determination" and a "grievance."  An "organization determination" is a decision whether to grant or deny benefits.

*See* 42 C.F.R. § 422.566(b).   "Grievance means any complaint or dispute, other than one that

constitutes an organization determination, expressing dissatisfaction with any aspect of an MA

organizations' or provider's operations, activities, or behavior, regardless of whether remedial

action is requested."  42 C.F.R. § 422.561.  Plaintiff acknowledges that Medicare regulations

provide for administrative review of organization determinations but do not provide for review

of grievances. Doc. 99, pp. 14-16.  *See* 42 C.F.R. § 422.567-422.626 (appeal process for

organization determinations); 42 C.F.R. § 422.564 (b) (explaining that the "grievance

procedures are separate and distinct from appeal procedures, which address organization

determinations as defined in § 422.566(b)[]").   Thus, in contrast to organization determinations,

the regulations do not evidence an intent to create an appeal route or additional avenues for

administrative or judicial review of grievances.[21]

Plaintiff admits that his "complaint" submitted to the Aultcare MAP and the Aultman

PAG was "properly classified as a 'grievance' rather than as an organization determination

because it "was not about money, but concerned getting proper care and the verbal abuse his

family was encountering, . . . ." Doc. 99, p. 16.  Plaintiff reasons that the Court should find an

implied private right of action because grievances would be unreviewable otherwise.  Doc. 99,

pp. 14-17 (citing *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000) and

*Bowen v. Mich. Academy of Family Physicians,* 476 U.S. 667 (1986)).

Plaintiff's reliance on *Michigan Academy* to argue for a private right of action that would

---

[21] Even in the case of organization determinations, a district court is without subject matter jurisdiction of an appeal of an organization determination until the claim has proceeded through the Department of Health and Human Services' administrative appeals process.  *Acquisto v. Secure Horizons ex. rel. United Healthcare Ins. Co.*, 504 Fed. Appx. 855, 856 (11th Cir. Jan. 24, 2013).  *See Heckler v. Ringer*, 466 U.S. 602, 614-615 (1984) (indicating that no judicial review of claims for payment of benefits was available prior to exhaustion of administrative appeals process); *see also Dial v. Healthspring of Alabama*, 541 F.3d 1044, 1047 (11th Cir. 2008) (In reliance on *Heckler*, the court concluded that the MAP's source of federal law, i.e., the Medicare Act, stripped "federal courts of primary federal-questions subject jurisdiction" over claims arising under that Act.)

permit judicial review of MAP grievance procedures is misplaced.  Plaintiff has not established

that such a private right of action was intended to be available or that his challenge should be

heard on the basis that it raises an otherwise unreviewable constitutional claim.  In *Acquisto v.*

*Secure Horizons ex. rel. United Healthcare Ins. Co.*, 504 Fed. Appx. 855, 856 (11th Cir. Jan. 24,

2013), the Eleventh Circuit considered whether a MAP enrollee has a constitutionally protected

liberty or property interest in appealing a MAP's determination with respect to a grievance.  The

court concluded that there was "no such constitutionally protected property interest."  *Id.*  The

court explained that, "whereas the regulations contemplate a right to appeal organization

determinations, no such right of appeal has been conferred for grievances."  *Id.* at 857.  Thus, the

court of appeals found that since "the Medicare Act's regulations did not deprive [the plaintiff]

of a constitutionally protected liberty or property interest, the district court properly dismissed

[the plaintiff's] complaint under Rule 12."  *Id.*

Plaintiff argues that, since AultCare elected to effectively include in its insurance contract

the Medicare regulations regarding grievances, even if there is no private right of action under

the Federal Medicare Act or regulations, his breach of contract claim in Count III does not fail.

Doc. 99, pp. 11-12.  Plaintiff's argument in this regard is unsupported by legal authority and he

has not shown that Count III is anything other than an attempt to assert a private cause of action

not intended by Congress.

Considering the foregoing, the undersigned recommends that the Court GRANT the

Aultman Defendants' Motion as to Counts III and IV on the basis that Plaintiff has not shown

that a private cause of action exists to review the handling of Medicare MAP grievances.

### 2.  Count VI – Fraud (AultCare)

In Count VI – Fraud (AultCare), Plaintiff alleges a fraud claim based on a January 9,

2015, letter that AultCare sent to Plaintiff regarding his grievance.  Doc. 1, pp. 48, 49 ¶¶ 221-223, 225-226.

> A claim for fraud in Ohio has the following six elements:
>
> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*State ex rel. Seibert v. Richard Cyr, Inc.*, --- N.E.3d ---, 2019 WL 3948996, *7, 2019-Ohio-3341 (2019) (quoting *Gaines*, 33 Ohio St.3d at 55).

Plaintiff's allegation of fraud relative to AultCare's January 9, 2015, letter is conclusory. Plaintiff asserts that, by sending a letter to Plaintiff on or about January 9, 2015, regarding the results of AultCare's investigations into Plaintiff's grievance, "AultCare made misstatements of material fact that AultCare knew to be false and misleading; upon which Defendant AultCare intended for Plaintiff to rely; on which statements Plaintiff did justifiably rely; and pursuant to which Plaintiff was harmed by his reliance thereon."  Doc. 1, p. 48, ¶¶ 221-222.  "Based on information and belief," Plaintiff alleges that no investigation was ever performed, no records were ever reviewed, no Aultman doctors, nurses or staff were questioned or spoken to regarding the full nature and extent of Plaintiff's grievance and no report was ever prepared.  Doc. 1, p. 48, ¶ 221.

The "[f]actual allegations [of a pleading] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  While a court must accept all well-pleaded factual allegations as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Id.* (internal citations omitted).  "A plaintiff's obligation to provide the grounds of

his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations omitted).

Here, Plaintiff's Complaint states only a formulaic recitation of two of the elements: justifiable reliance on the alleged material misrepresentation and resulting injury caused by such reliance. The Complaint does not allege how Plaintiff relied on the alleged misrepresentations or how he was harmed thereby.

In light of the foregoing, the undersigned recommends that the Court GRANT the Aultman Defendants' Motion as to Count VI – Fraud (AultCare) for failure to state claim for fraud.

### 3. Count IX

Count IX alleges a claim for "Denial of Court and Abuse of Process." Doc. 1, pp. 54-58, ¶¶ 251-266. Count IX is premised on the alleged wrongful refusal of the Aultman Defendants to provide Alexander's medical records to Plaintiff in an attempt to prevent Plaintiff from timely filing a medical malpractice claim. *Id.* Plaintiff also contends that the Aultman Defendants' conduct was intended to perpetrate a fraud on Plaintiff and the courts "by continuing to litigate the appropriate future release of such records when" the medical records had already been released to Aultman's legal counsel. Doc. 1, p. 57, ¶ 263.

The Aultman Defendants contend that Count IX fails as a matter of law because the alleged improper conduct is not connected with any harm since Plaintiff did file a claim for medical negligence. Doc. 93, pp. 19-20. They assert that, while the medical negligence claim is untimely, there is no assertion that the Aultman Defendants prevented him from filing it. *Id.*

Count IX is labeled "Denial of Court and Abuse of Process." However, the Complaint does not clearly identify two separate causes of action for "denial of court" or "abuse of

process."  Ohio law recognizes a state law claim for abuse of process.  In his opposition brief,

Plaintiff alludes to a claim of fraud underlying Count IX (Doc. 99, p. 21) but Count IX is not

pleaded as a fraud claim.  To the extent that Plaintiff's "denial of court" claim is an attempt to

assert a claim that the Aultman Defendants denied him a constitutional right of access to court,

unlike Count X,[22] Plaintiff did not plead Count IX as a § 1983 action.  In light of the foregoing,

the undersigned construes Count IX as a claim for abuse of process.  However, as discussed

below, Plaintiff has failed to sufficiently plead such claim.

There are three elements to the tort of abuse of process in Ohio.  They are: "(1) that a

legal proceeding has been set in motion in proper form and with probable cause; (2) that the

proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not

designed; and (3) that direct damage has resulted from the wrongful use of process." *Voyticky v.*

*Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) (quoting *Yaklevich v. Kemp,*

*Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 626 N.E.2d 115, 166 (1994)).  Defendants'

argument in support of their Motion is focused on the third element, i.e., harm caused by the

alleged wrongful use of process.  However, before reaching that element, the undersigned

observes that Plaintiff has not sufficiently pleaded the first two elements.  The "[f]actual

allegations [of a pleading] must be enough to raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555.  While a court must accept all well-pleaded factual allegations as true,

it need not "accept as true a legal conclusion couched as a factual allegation."  *Id.* (internal

citations omitted).  "A plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions[.]"  *Id.*  (internal quotations omitted).

---

[22] Count X is asserted only against the Rose Defendants and is the subject a separate motion for judgment on the pleadings which will be addressed in a separately filed Report and Recommendation.

There is no indication in Plaintiff's Complaint what legal proceeding Plaintiff is alleging was either set in motion or perverted in an attempt to accomplish an ulterior purpose for which the proceeding was not designed.  Further, with respect to the third element, damage, Plaintiff alleges that the alleged improper conduct of Aultman and AultCare in denying Plaintiff access to his father's records precluded Plaintiff from filing his medical claim within the statute of limitations.  Doc. 1, p. 56, ¶ 261.  However, since Plaintiff chose not to utilize the procedures available to him to seek an extension of time to file the requisite affidavit of merit, (see discussion above regarding equitable tolling), he has not sufficiently alleged damage from the alleged wrongful use of process.

For the reasons explained herein, the undersigned recommends that the Court GRANT the Aultman Defendants' Motion as to Count IX for failure to state a claim.

### 4.  Count XI

In Count XI, Plaintiff alleges a claim of civil conspiracy against the Aultman Defendants. Doc. 1, pp. 59-61, ¶¶ 272-276.  Based on information and belief, Plaintiff alleges that those Defendants, "with a common objective of avoiding a potential medical malpractice suit being filed against the Hospital by Plaintiff and/or one or more of his family members, had a meeting of the minds regarding such objective or course of action, and committed one or more unlawful acts in furtherance of such objective[,]" which Plaintiff alleges included but was not limited to:

(a)     AultCare's actions in wrongfully (i) declining to accept Plaintiff's initial grievance on the basis that Alexander had not previously signed any type of POA; and (ii) refusing to meet with Plaintiff and/or provide him with a written report in order to disclose the results of their federally-mandated and non-privileged investigation regarding his father;

(b)     Aultman Hospital's actions taken in wrongfully failing to disclose to Plaintiff his rights under the Federal Medicare Regulations;

(c)     Aultman Hospital's actions in wrongfully attempting to deny Plaintiff access to his own father's medical records so as to make it impossible for him to submit an affidavit of merit which, by statute, must be based upon a review of "all medical records reasonably available;" and

(d)     AultCare's actions in failing to disclose to Plaintiff the names of the law firms who received Alexander's medical records, and the dates on which they received the records, in order to prevent Plaintiff from proving in a court of law that such law firms continued to vexatiously litigate to obtain such records when, in fact, they already possessed them.

Doc. 1, p. 60, ¶ 275.  Plaintiff alleges that he has suffered monetary damages as a direct and proximate result of the alleged "wrongful actions to engage in a civil conspiracy with the objective of thwarting or delaying Plaintiff from (a) filing a medical negligence claim against the Hospital; and (b) proving in subsequent litigation that Aultman's counsel was pretending not to have Alexander's medical records . . . ."  Doc. 1, p. 61, ¶ 276.

In Ohio, the tort of civil conspiracy "has been defined as a 'malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'"  *Kentry v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419 (1995) (internal citations omitted).  "An underlying unlawful act is required before a civil conspiracy claim can succeed."  *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998); *see also Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 23 F.Supp.2d 771, 795 (N.D. Ohio 1998) (indicating that to be actionable, the "conspiracy must be based upon an actionable underlying tort[]").

Defendants first argue that Plaintiff's claim, which rests on an anticipated future contingency, i.e., that his negligence claim will be dismissed based on the statute of limitations, is not justiciable.  Doc. 93, p. 20.  Second, Defendants argue that the Complaint fails to set forth facts underlying the alleged "information and belief" upon which Count XI is based.  Doc. 93,

pp. 20-21.  Third, Defendants argue that Plaintiff has failed to sufficiently allege harm because Plaintiff makes no claim that Defendants prevented him from filing his lawsuit.  Doc. 93, p. 21.

Plaintiff has not demonstrated that the alleged conspiracy was based on an actionable underlying tort.  As discussed above, the undersigned has recommended that the Court dismiss the Counts that are premised on alleged violations of the Medicare regulations.  It is those same allegations that underlie the alleged conspiracy in Count XI.  Therefore, the Court should also dismiss Count XI.  *See e.g., Collier v. Ocwen Loan Servicing, LLC.*, 2013 WL 3715699, * 7 (N.D. Ohio Jul. 15, 2013).  Additionally, as explained above in connection with the equitable tolling of the statute of limitations analysis, the undersigned finds that, since Plaintiff chose not to utilize the procedures available to him to seek an extension of time to file the requisite affidavit of merit he has not sufficiently alleged that damage to him resulted from the Aultman Defendants' alleged wrongful conduct.  For these reasons, the undersigned recommends that the Court GRANT the Aultman Defendants' Motion to dismiss Count XI for failure to state a claim for civil conspiracy.

### 5.  Count XII

In Count XII, Plaintiff alleges that the Aultman Defendants are liable for conspiring to violate RICO – 18 U.S.C. § 1962(d).  Doc. 1, pp. 61-63, ¶¶ 277-282.  Plaintiff alleges that the Defendants "agreed and conspired to violate 18 U.S.C. § 1962(d) for the common objective of avoiding medical malpractice suits being filed against the Hospital by Plaintiff and/or other potential claimants unrelated to Plaintiff; had a meeting of the minds regarding such objective or course of action; and committed one or more unlawful acts in furtherance of such objective[,]" which Plaintiff alleges included but was not limited to:

> (a)      systematically, deliberately, and wrongfully failing to inform, educate, make aware, and/or disclose to those patients (or their families) admitted to the

Hospital and covered under original Medicare or Medicare advantage plans, such patient's federally-guaranteed rights and privileges afforded under Federal Medicare law and the Federal MAP Regulations;

(b)    systematically, deliberately, and wrongfully attempting to deny patients (and their families) their federally-protected rights to gain access to such person's medical records so as to make it difficult, if not impossible, for them to submit an affidavit of merit along with their legal malpractice complaint which, by statute, must be based upon a review of "all medical records reasonably available;" and

(c)    in the case of patients covered by MAPs sponsored by AultCare, attempting to avoid such MAP's federally-mandated obligation to (i) accept and process grievances submitted by patients (and/or their families) regarding such patient's care and treatment while at Aultman, and (ii) resolve such complaints in a reasonable and meaningful manner; by systematically, deliberately and wrongfully (x) refusing to accept such grievances, (y) failing to conduct such inquiries, and/or (z) failing to disclose the results of such investigations on the basis of state peer review statutes which are superseded by the Federal MAP Regulations.

Doc. 1, pp. 61-62, ¶ 279.

Plaintiff alleges that the Aultman Defendants "intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity and knew that their predicate acts were part of a pattern of racketeering activity, and agreed to the commission of those acts to further the schemes described above [and] [s]uch conduct constitutes a conspiracy to violate 18 U.S.C. Section 1962(c), in violation of 18 U.S.C. 18 U.S.C. § 1962(d)."  Doc. 1, p. 62, ¶ 280.

Section 18 U.S.C. § 1962(c) provides that "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  To state a claim under § 1962(c), "a plaintiff must allege (1) two or more predicate offenses representing participation in a pattern of racketeering activity; (2) the existence of an 'enterprise'; (3) a nexus between the pattern of racketeering activity and the

enterprise; and (4) injury to the plaintiff's business or property sustained as a result of the racketeering activity engaged in by the enterprise." *Infocision Management Corp. v. Foundation for Moral Law, Inc.*, 2009 WL 650282, * 6 (N.D. Ohio Jan. 14, 2009) (citing *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000) (noting abrogation of *VanDenBroeck* on other grounds in *Bridge v. Phoenix Bond & Indem. Co.*, — U.S. —, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008)).  A plaintiff seeking to assert "a RICO claim must allege facts to demonstrate that the defendant committed an illegal predicate act." *Eva v. Midwest National Mortgage Cbank, Inc.*, 143 F.Supp.2d 862, 876 (N.D. Ohio 2001).  "RICO defines a 'pattern of activity' as 'at least two acts of racketeering activity.'" *Thermodyn Corp. v. 3M Co.*, 593 F.Supp.2d 972, 980-981 (N.D. Ohio 2008) (citing 18 U.S.C. § 1961(5)).  "Crimes comprising 'racketeering activity'" which "are commonly referred to as 'predicate acts'" are contained in 18 U.S.C. § 1961(1).  *Thermodyn Corp.*, 593 F.Supp.2d 972 at 980-981.

The Aultman Defendants contend that Count XII is legally insufficient because Plaintiff has failed to plead an essential element of the claim, i.e., criminal conduct by the Defendants. Doc. 93, pp. 21-22.  The Complaint does not specifically identify the alleged illegal predicate acts.  In his opposition, Plaintiff generally refers to "the predicate acts identified in [his] Complaint" and appears to point to the alleged denials of patient medical records as predicate acts set forth in his Complaint.  Doc. 99, p. 24, n. 25.  However, he fails to explain how that alleged wrongful conduct amounts to alleged racketeering activity under § 1961(1) such that it would constitute a predicate act.

In his opposition brief, Plaintiff also states "In addition to the predicate acts identified in [the] Complaint,[23] it was discovered *after* Plaintiff filed his current federal lawsuit that the

---

[23] As noted above, the Complaint does not identify the alleged predicate acts.

Aultman Defendants have engaged in wire fraud (which is a federal crime) by taping telephone conversations between Plaintiff and Aultman representatives, without Plaintiff's knowledge or consent, and outside the parameters of the Federal Wiretapping Act." Doc. 99, p. 24 (emphasis in original). Even if the alleged wire fraud had been discovered prior to the filing of the Complaint and included in the Complaint as a predicate act or, even assuming the Court was inclined to allow amendment of the Complaint at this late stage to state a RICO claim, there must be at least two predicate acts as discussed above. *See Infocision Management Corp.*, 2009 WL 650282, * 6; *see also Thermodyn Corp.*, 593 F.Supp.2d at 980-981. Thus, even if the alleged wire fraud had been pled, Count XII would fail to state a claim under RICO.

For the reasons discussed herein, the undersigned recommends that the Court GRANT the Aultman Defendants' Motion as to Count XII for failure to state a RICO claim.

## V.      Conclusion and Recommendation

For the reasons explained herein, the undersigned recommends that the Court GRANT in part and DENY in part the Aultman Defendants' Motion.

The Motion should be GRANTED with respect to all Counts asserted against Defendant AHF (with the exception of Count IX)[24] because the claims against AHF are barred based on principles of res judicata; the Motion should be DENIED to the extent it seeks dismissal on the basis of res judicata with respect to Defendants Aultman Hospital and AultCare; the Motion should be GRANTED as to all of the Aultman Defendants with respect to Counts I (Medical Malpractice), V (Negligent Hiring and Supervision), VI – Fraud (Nashawati), VII (Intentional Infliction of Emotional Distress ("IIED")), VIII (Interference with Business Relations) because those are "medical claims" under Ohio law that are barred by the applicable statute of

---

[24] The Aultman Defendants do not contend that Count IX is barred by res judicata.

limitations; the Motion should be DENIED as to all Aultman Defendants to the extent it seeks

dismissal of Counts III (Breach of Contract), IV (Violations of the Federal Medicare Act and

Federal Medicare Advantage Regulations), VI – Fraud (AultCare), IX (Denial of Court and

Abuse of Process), XI (Civil Conspiracy), and XII (RICO) on the basis that they are "medical

claims" and barred by the statute of limitations; the Motion should be GRANTED as to all of the

Aultman Defendants with respect to Counts III (Breach of Contract), IV (Violations of the

Federal Medicare Act and Federal Medicare Advantage Regulations), VI – Fraud (AultCare), IX

(Denial of Court and Abuse of Process), XI (Civil Conspiracy), and XII (RICO) because those

Counts fail to state claims upon which relief can be granted; and the Motion should be DENIED

as to Defendant Aultman Hospital with respect to Count II (Wrongful Death).

In summary, the undersigned recommends that all Counts, except Count II (Wrongful

Death) with respect to Defendant Aultman Hospital, be dismissed.


Dated: December 19, 2019                         */s/ Kathleen B.  Burke*
                                                  Kathleen B. Burke
                                                  United States Magistrate Judge


## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir.
1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).