IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN A. ARMATAS, Individually and as Personal Medicare Representative and Executor of the Estate of ALEXANDER E. ARMATAS, | ) ) ) ) ) | CASE NO. 5:19-cv-00349 |
| Plaintiffs, | ) ) | JUDGE JOHN R. ADAMS |
| v. | ) ) ) | MAGISTRATE JUDGE KATHLEEN B. BURKE |
| AULTMAN HEALTH FOUNDATION, et al., | ) ) ) | **REPORT & RECOMMENDATION** |
| Defendants. | ) | (Rose Defendants' Motion for Judgment on the Pleadings) |

**I.** **Introduction**

This case arises from the hospitalization and death of Alexander E. Armatas ("Alexander") at Aultman Hospital in Canton, Ohio, in late 2014. Alexander's son, Steven A. Armatas ("Steven"), filed this action on February 15, 2019, in three capacities: on his own behalf, as the personal Medicare representative for his father, and as executor of his father's estate. Plaintiffs (referred to collectively herein as "Plaintiff") assert 12 state and federal claims against 14 Defendants. This case is the re-filing of a case previously filed by Plaintiff in the Stark County, Ohio, Court of Common Pleas on December 28, 2016.[1]

---

[1] Plaintiff voluntarily dismissed the state court case on February 20, 2018 pursuant to Ohio Civil Rule 41(A)(1)(a). Doc. 1, p. 4, ¶¶ 1-4. The Complaint filed in this Court added the three defendants who were not named in the state court action. Doc. 1, p. 4, ¶ 4.

1

Pursuant to the Court's referral of this case to the undersigned for general pretrial supervision and issuance of a Report & Recommendation on any dispositive motions (Doc. 45), the undersigned submits this Report & Recommendation as to the Motion for Judgment on the Pleadings filed by Defendants Mark N. Rose ("Defendant Rose"), Gregory Haban, M.D. ("Defendant Haban"), and Timothy Regula ("Defendants Regula") (hereinafter referred to collectively as "Rose Defendants")[2] pursuant to Federal Rule of Civil Procedure 12(c) (Doc. 73) ("Motion"). Plaintiff filed an opposition to the Defendants' Motion (Doc. 100) and the Defendants filed a reply (Doc. 107).

As explained more fully below, Count X of the Complaint (Violation of Federal Civil Rights), the only Count asserted against the Rose Defendants, fails to state a claim upon which relief can be granted because the Rose Defendants were not state actors when they took the actions Plaintiff complains of. Accordingly, the undersigned recommends that the Court GRANT the Rose Defendants' Motion and dismiss Count X.

## II. Plaintiff's Complaint – Allegations against Rose Defendants

### A. Claims against the Rose Defendants

The Rose Defendants were not named as defendants in the action previously filed by Plaintiff in the Stark County Court of Common Pleas on December 28, 2016. Doc. 1, p. 4, ¶ 4.[3]

---

[2] In addition to the Rose Defendants, the Complaint was filed against the following defendants: Nihad Boutros, M.D., Eyad Nashawati, M.D., Matthew Knoch, M.D., Jeffrey Miller, M.D., Chadi E. Bouserhal, M.D., and Pulmonary Physicians, Inc. of Canton, Ohio ("ICU Defendants"); Aultman Heath Foundation ("AHF"), Aultman Hospital, AultCare Insurance ("AultCare") ("Aultman Defendants") and M. Richard Stjernholm, D.O. and Ohio Physicians Professional Corporation dba Surgical Associates of Canton of OPPC (collectively, the "Stjernholm Defendants"). Doc. 1.

[3] *See also* https://www.starkcjis.org/#/case/detail/CPC/2016CV02801. Fed. R. Evid. 201(b)(2) allows a court "to judicially take notice of a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See also e.g.*, *Ashipa v. Warden, Chillicothe Corr. Inst.*, 2009 WL 3152840, *3 (S.D. Ohio Sept. 30, 2009) (taking judicial notice of online docket records available to the public through the internet).

They were added as Defendants when the case was re-filed in this Court. Only one Count is asserted against them – Count X (Violation of Federal Civil Rights). Doc. 1, pp. 58-59, ¶¶ 267-271. In that Count, Plaintiff sues Defendants Rose, Haban and Regula in their individual capacities for alleged violations of federal civil rights statutes under 42 U.S.C. § 1983. Doc. 1, pp. 7, 58-59, ¶¶ 15-17, 267-271. In his opposition brief, Plaintiff argues that the Rose Defendants "violated Plaintiff's civil rights by attempting to hinder him from pursuing claims of medical negligence and related torts against AHF and its affiliated entities." Doc. 100, p. 3, *see also* Doc. 1, p. 58, ¶ 269.

### B. Factual allegations relevant to the Rose Defendants

Defendant Rose "was employed by and served as senior Vice President to AHF, Aultman and AultCare[.]" Doc. 1, p. 7, ¶ 15. Defendant Haban "was employed by and served as Medical Director for Aultcare[]. Doc. 1, p. 7, ¶ 16. Defendant Regula "was employed by and served as Chief Compliance Officer for Aultman and AultCare[.]" Doc. 1, p. 7, ¶ 17.

Steven is the only child of Alexander. Doc. 1, p. 4, ¶ 5. On October 11, 2014, Alexander was rushed to the hospital after suffering a cardiac episode while at home. Doc. 1, p. 9, ¶ 25. Alexander was 97 years old at the time of his hospitalization. Doc. 1, p. 8, ¶ 22. A few hours after Alexander's admission, emergency room physicians advised Steven that Alexander had suffered catastrophic injuries and, due to Alexander's advanced age, he would likely die in the next three hours. Doc. 1, p. 9, ¶ 26. Alexander was transferred from the Emergency Room to the Surgical Intensive Care Unit of Aultman Hospital. Doc. 1, p. 10, ¶ 30.

As more fully detailed in Reports and Recommendations filed in connection with dispositive motions filed by other named Defendants in this action, while Alexander was hospitalized, various physicians recommended to Alexander's family that, due to Alexander's

3

condition, they should remove him from life support. *See* Docs. 117-119. Alexander's family strongly disagreed with their recommendations and did not remove Alexander from life support. *Id.* Also, as described in the earlier filed Reports and Recommendations, while his father was admitted, Steven became concerned about discoloration developing on his father's right toes and leg and it was eventually determined that dry gangrene was setting in. *Id.*

In November 2014, Plaintiff prepared and submitted a grievance to the Aultman Hospital Patient Advocacy Group ("the Aultman PAG") and the PrimeTime Health Care Plan-Timken Company, a Medicare Advantage Plan ("the AultCare MAP") regarding alleged improprieties in various Defendants' treatment of his father and Plaintiff during his father's hospitalization. Doc. 1, pp. 22-24, ¶ 90-97. Plaintiff submitted a supplement to his grievance to AultCare in December describing alleged unprofessional conduct and defamatory remarks directed at him by an ICU Defendant physician. Doc. 1, p. 25, ¶ 106.

The evening prior to Alexander's death, Steven and Alexander's wife were called to the hospital by Alexander's attending physician for the evening who informed them that Alexander's dry gangrene had developed into sepsis and the infection was affecting his bloodstream and vital organs. Doc. 1, pp. 26-27, ¶ 113. Steven and his mother returned to the hospital and remained by Alexander's bedside until his death on December 31, 2014. Doc. 1, p. 27, ¶ 114.

On or about January 9, 2015, Plaintiff received an unsigned one-page letter from the AultCare MAP regarding his grievance. Doc. 1, p. 27, ¶ 115. The letter indicated that an unnamed Medical Director had spoken to unidentified individuals from Aultman Hospital and the AultCare MAP had completed its federally-mandated investigation regarding his grievance. *Id.* Plaintiff was further informed that the results of that investigation could not be shared with him or anyone because the information was considered "peer review" and therefore

"confidential."  *Id.*  Plaintiff alleges that he later learned that the unnamed Medical Director was Defendant Haban.  *Id.*

Following Alexander's death, on May 27, 2015, Steven visited Aultman Hospital to follow up on the status of the grievance he had submitted to the Aultman PAG and the AultCare MAP and to start the process of obtaining Alexander's medical records.  Doc. 1, pp. 28-29, ¶ 122.  Plaintiff alleges that an Aultman Hospital representative informed him that "she could not discuss [the] issues with him because she said all Aultman personnel had been instructed by Senior Vice President Mark N. Rose not to speak to or assist Plaintiff under any circumstances [and] Plaintiff was then asked to leave the premises."  Doc. 1, p. 29, ¶ 123.  Shortly after that, Plaintiff received a letter from Defendant Rose "informing him that any future attempt by Plaintiff to speak with *any* Aultman employee about *anything* concerning his father . . . would result in Plaintiff being sued[.]"  Doc. 1, p. 29, ¶ 124 (emphasis in original).

Thereafter, Steven filed an action for declaratory judgment, injunctive relief, and punitive damages in September 2015 against Aultman Health Foundation in the Stark County Court of Common Pleas.  Doc. 1, p. 29, ¶ 125.[4]  On or about June 6, 2016, during the course of that case, Steven obtained an order requiring the release of Alexander's medical records to him.  Doc. 1, p. 29, ¶ 125.

Thereafter, on or about April 4, 2017, "Plaintiff formed a reasonable belief that Aultman and/or AultCare had released his father's medical records to its counsel shortly after Plaintiff filed his initial lawsuit in state court, and then either directed its counsel to pretend, or subsequently discovered its lawyers were pretending, not to have the records for over one year in order to engage Plaintiff in vexatious litigation regarding obtaining those records (which they

---

[4] *See also*  https://www.starkcjis.org/#/case/detail/CPC/2015CV02003; Doc. 25-3.

already possessed) through a court order." Doc. 1, pp. 29-30, ¶ 126. Such belief and suspicion caused Plaintiff on or about July 16, 2018, to submit a letter in his capacity as Executor of the Estate of Alexander Armatas to the Aultman Medical Records Department requesting an accounting of Alexander's private health information ("PHI") for the period January 1, 2015, through June 30, 2018. Doc. 1, p. 30, ¶ 127. Plaintiff alleges that, although HIPAA requires a response to such an accounting request within 28 days, Plaintiff did not receive a response from Aultman or its Chief Compliance Officer, Defendant Regula, until January 31, 2019. Doc. 1, p. 30, ¶ 129. Plaintiff also alleges that, although such an accounting request requires the reporting of disclosures made by Aultman Hospital to any entity providing legal services, the accounting he received did not report disclosures to the two law firms[5] providing legal services to the Aultman Defendants during the specified period. Doc. 1, p. 30, ¶ 130.

### III. The Rose Defendants' Motion for Judgment on the Pleadings

In their Motion, the Rose Defendants argue that Count X should be dismissed because: (1) the claims against each of the three Rose Defendants involve acts or omissions that were lawful; (2) the claims against Defendant Rose are barred by res judicata; (3) the claims against Defendants Rose and Haban are barred by the statute of limitations; and (4) there is no basis for liability under 42 U.S.C. § 1983 for any of the claims since the Complaint lacks any factual allegations upon which the Rose Defendants' conduct may be considered state action. Doc. 73, Doc. 107.

### IV. Law and Analysis

#### A. The Rose Defendants' Fed. R. Civ. P. 12(c) motion may be considered as a Fed. R. Civ. P. 12(b)(6) motion

---

[5] Reminger & Co. and Milligan Pusateri Co., L.P.A. Doc. 1, p. 30, ¶ 130.

Plaintiff initially contends that the Rose Defendants' Motion is premature. He argues that Fed. R. Civ. P. 12(c) provides that, "after the pleadings are closed--but early enough not to delay the trial--a party may move for judgment on the pleadings." Doc. 100, p. 2 (quoting Fed. R. Civ. P. 12(c)). Further, Plaintiff argues that Fed. R. Civ. P. 7(a) defines "pleadings" to include complaints and answers but not motions. *Id.* Since a number of parties filed Fed. R. Civ. P. 12(b)(6) motions but not answers, Plaintiff asserts that the pleadings are not closed and the Rose Defendants' Motion for Judgment on the Pleadings is therefore premature and should be denied as such. *Id.*

When a case involves "multiple defendants, all defendants must file an answer before a Rule 12(c) motion can be filed." *Horen v. Board of Educ. of Toledo City School Dist.*, 594 F.Supp.2d 833, 840 (N.D. Ohio 2009). However, a prematurely filed Fed. R. Civ. P. 12(c) motion may be treated as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) if "the issues raised in the motion were sufficiently raised in the moving defendant's answer as affirmative defenses." *Ortiz v. Holmes*, 157 F.Supp.3d 692, 695 (N.D. Ohio 2016); *Horen*, 594 F.Supp.2d at 840-841 (construing a "premature, pre-answer Rule 12(c) motion as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)[]"); *Collins v. Muskegon County Sherriff's Dept.*, 2007 WL 426586, * 5 (W.D. Mich. Feb. 1, 2007) ("[I]t is not improper to treat a premature, pre-answer Rule 12(c) motion as a motion to dismiss under Rule 12(b)(6)."); (*Lohner v. Lake County, Tennessee*, 2017 WL 3160569, * 2 (W.D. Tenn. July 25, 2017) (indicating that "district courts within our circuit have expressed a willingness to construe motions under 12(b)(6) as motions under 12(c) and vice versa[]"). The standard of review is the same for motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) and motions to dismiss under Fed. R. Civ. P. 12(b)(6). *Ortiz*, 157 F.Supp.3d at 696; *Horen*, 594 F.Supp.2d at

7

841. Thus, a party will not be prejudiced if the court treats a Fed. R. Civ. P. 12(c) motion as a Fed. R. Civ. P. 12(b)(6) motion. *Horen*, 594 F.Supp.2d at 841.

The Rose Defendants' Motion contends that the claims against them are barred by res judicata, the statute of limitations, and legal insufficiency of the claims. Doc. 73. In their answer, among other affirmative defenses, the Rose Defendants assert failure to state a claim on which relief can be granted; Plaintiff's lack of standing to sue for alleged violations of the rights of Medicare enrollees; the Rose Defendants were not state actors so as to support a claim for violation of 42 U.S.C. § 1983; res judicata; and statute of limitations. Doc. 1, p. 29, ¶¶ 293, 295-297, 301. Considering the foregoing, in this case, even though the pleadings may not be closed, the undersigned finds it appropriate to convert the Rose Defendants' motion to a Fed. R. Civ. P. 12(b) motion to dismiss.

**B.     Standard of review**

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)(citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)(internal citations omitted). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Fritz*, 592 F.3d at 722 (quoting *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir.2007)).

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in

*Twombly*). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Id*. (internal citations omitted). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (internal quotations omitted). "When considering a motion to dismiss on the ground of a statute of limitations, the Court must decide whether 'it is apparent from the face of the complaint that the limit for bringing the claim[s] has passed.'" *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F.Supp.3d 734, 761 (2019) (quoting *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (noting alteration in original)).

### C. Count X – Violations of Federal Civil Rights Statutes

In Count X, citing to 42 U.S.C. § 1983, Plaintiff asserts a "*Bivens* claim," alleging that the Rose Defendants violated his rights secured by the Constitution or federal statutes by taking action for the purpose of "thwarting or preventing him from potentially bringing a medical malpractice or wrongful death action against Aultman" and/or "to purposely deprive Plaintiff of access to a full and complete record of who Alexander's records had been disclosed to." Doc. 1, p. 58, ¶ 269.

In *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized "an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). The Supreme Court has applied *Bivens* in limited settings but when it has been applied, "the implied cause of action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." *Id.* (internal quotations and citations

omitted); *see also Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (indicating that "*Bivens* and § 1983 actions [are reviewed] under the same legal principles, except for the requirement of federal action under *Bivens* and state action under § 1983[]"). Thus, to prevail on his *Bivens* claim, Plaintiff must prove two elements: "(1) that he . . . was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Id.* (citing *Bivens*, 403 U.S. at 392); *see also American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (setting forth required showing for stating a claim for relief under § 1983). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).

The Rose Defendants argue that Count X should be dismissed for failure to state a claim because Plaintiff has failed to allege facts showing that the Rose Defendants were "state actors." Thus, they assert that the Plaintiff's § 1983 claims against them should be dismissed for failure to state a claim.

In his Complaint, Plaintiff alleges that the Rose Defendants "are deemed 'state actors' for purposes of this litigation because federal Medicare Advantage Plans are delegated and assigned certain, duties, obligations, and responsibilities by the federal government which are typically reserved for the federal government itself, and when private individuals are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its Constitutional limitations." Doc. 1, p. 59, ¶ 270. In opposition to the Rose Defendants' Motion, Plaintiff contends that numerous courts have classified Medicare management-care plans and HMOs as "state actors" for purposes of § 1983 claims on the basis that the federal government exercises significant control over them. Doc. 100, pp. 16-18.

"[T]he under-color-of-state-law element of § 1983 excludes from its reach "merely private conduct, no matter how discriminatory or wrongful[.]" *American Manufacturers*, 526 U.S. at 50 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). Where "extensive state regulation of private activity" is involved, "the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State[.]" *Id.* at 52. And "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Id.* "[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). "Whether such a 'close nexus' exists . . . depends on whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *American Manufacturers*, 526 U.S. at 52 (internal citations omitted).

In *Kovach v. Coventry Health Care, Inc.*, 2011 WL 284174, * 1-2 (W.D. Pa. Jan. 25, 2011), relied on by the Rose Defendants, the plaintiff filed suit against the company that provided the Medicare Advantage Plan that plaintiff and her late husband were enrolled in, alleging state law claims relating to the death of her husband and a federal claim for violation of due process. The plaintiff asserted that her husband's physicians recommended that he be transferred from the ICU at a hospital to a long-term acute care facility so he could receive aggressive rehabilitative therapy to assist him with his ability to breath on his own, which therapy was not available at the ICU. *Id.* at 2. But, despite these recommendations, the defendants refused to approve insurance coverage for the transfer, failed to request or review

11

medical information related to the request, and refused to speak with the physicians. *Id.* at 2. The plaintiff's husband ultimately died at the ICU after developing an infection while there. *Id.* The plaintiff presented a due process claim, arguing that defendants were "entwined with the state, having been delegated the public function of providing Medicare benefits to residents of Pennsylvania by virtue of state license." *Id.* at 3.

The court in *Kovach*, having considered Supreme Court cases involving state regulation of private activity, granted defendants' motion to dismiss, stating:

> Undeniably, the Medicare program was created by federal statute and is administered by CMS, a division of the federal Department of Health and Human Services. CMS administers the Medicare program with federal funds by contracting with private insurance companies to deliver benefits pursuant to Medicare Advantage plans. 42 U.S.C. § 1395w-27.
>
> The Amended Complaint in this matter is devoid of any allegation that the State is responsible for the specific conduct of which Plaintiff complains. As the United States Supreme Court has stated the fact that Defendants are licensed by the state and subject to state regulations simply does not convert their actions into that of the state for purposes of the Fourteenth Amendment. Therefore, the motion to dismiss Count I will be granted as the Court finds that Defendants are not state actors.

*Id.* at 3-4.

In advancing his claim that "privately-run, but federally sponsored and regulated [entities] constitute 'state actors' because the federal government exercises significant control over them[,]" Plaintiff relies on a district court case out of Arizona – *Grijalva v. Shalala*, 946 F.Supp. 747 (D. Ariz. 1996). Doc. 100, pp. 16-17 – and contends that the Rose Defendants' reliance on *Kovach* is flawed because *Kovach* relied on Supreme Court cases that are distinguishable, i.e., *American Manufacturers* (a workers compensation matter), *Blum* (relating to Medicaid funding for nursing homes), and *Brentwood Academy* (relating to an organization of high school coaches wherein the court found state action). Doc. 100, pp. 17-18.

12

Plaintiff's attempt to avoid the striking similarities between *Kovach* and this case by attempting to distinguish cases relied upon by the *Kovach* court is unconvincing.  Moreover, Plaintiff's reliance on *Grijalva* does not advance his argument.  The Ninth Circuit affirmed the district court's decision in *Grijalva*,[6] however, the Supreme Court subsequently vacated and remanded the case to the Ninth Circuit for further consideration in light of *American Manufacturers*, 526 U.S. 40,[7] one of the allegedly distinguishable cases that Plaintiff claims makes Defendants' reliance on *Kovach* flawed.  Thus, it is Plaintiff's reliance on *Grijalva*, not Defendants' reliance on *Kovach*, that is flawed.

Also, in *Quinones v. UnitedHealth Group Inc.*, the plaintiff brought suit against defendants, insurance providers, who contracted with the state, received funding from the state, and were overseen and monitored by the state, alleging that they were deliberately indifferent to plaintiff's immobility and acting under color of law when they failed to provide plaintiff benefits under Medicaid.  2015 WL 4523499 (D. Haw Jul. 24, 2015).  The court found no per se rule precluding a finding of state action but proceeded to analyze whether the plaintiff's allegations were sufficient to state a claim involving state action.  *Id.* at * 3-5.  In doing so, the court recognized that *American Manufacturers* was distinguishable since it related to workers compensation but also observed that the Supreme Court had remanded *Grijalva* for application of *American Manufacturers* in the Medicare benefits decision context.  *Id.* at 4, n. 4.  Thus, the court applied *American Manufacturers* to analyze whether the plaintiff had sufficiently alleged state action.  *Id.*  In doing so, the court concluded that the plaintiff failed to allege facts showing

---

[6] *Grijalva v. Shalala*, 152 F.3d 1115 (9th Cir. 1998)

[7] *Shalala v. Grijalva*, 526 U.S. 1096 (1999).  The Ninth Circuit then remanded the case to the district court for further consideration in light of *American Manufacturers*. *Grijalva v. Shalala*, 185 F.3d 1075 (1999).  However, "the parties in *Grijalva* settled before the district court had an opportunity to reconsider the case[.]" *See Quinones v. UnitedHealth Group Inc.* 2015 WL 4523499, * 4, n. 3 (D. Haw Jul. 24, 2015) (internal citations omitted).

13

that the state "exercised coercive power or . . . provided such significant encouragement, either overt or covert, that the choice in law must be deemed to be that of the State." *Id.* at 5. And the court found that plaintiff had not alleged any facts showing that the state was involved in any manner in the personal mobility device benefits' decision. *Id.* The court stated,

> If contracting, funding, and regulating was sufficient to create state action, nearly every government contract would produce the possibility of § 1983 liability against the government contractor. Congress did not intend this result, and such a decision by this Court would conflict with clear Supreme Court precedent on this point.

*Id.* (citing *American Manufacturers*).

Here, considering the foregoing, the undersigned finds that Plaintiff has failed to sufficiently allege state action. Plaintiff has failed to allege any way in which the federal government was involved with: Defendant Rose informing Plaintiff that he could not speak with any Aultman employee about anything relating to his father; Defendant Haban either not initiating an investigation or not rendering a report regarding the results of his inquiry into Plaintiff's grievance; or Defendant Regula not providing a timely or accurate accounting of disclosures of Alexander's private health information. While AultCare was operating as a MAP under Federal regulations, Plaintiff has not shown that federal sponsorship or regulation converted private action of the Rose Defendants into "state action." Accordingly, the undersigned finds that Plaintiff has failed to state a *Bivens*/§ 1983 action.[8] Thus, the undersigned recommends that the Court GRANT the Rose Defendants' Motion and dismiss Count X.

Because the foregoing analysis resolves Count X in its entirety, it is not necessary to address the Rose Defendants' alternative arguments for dismissal of Count X.

---

[8] Since Plaintiff has not sufficiently alleged the second element, it is not necessary for the Court to decide the first element, i.e., whether Plaintiff was deprived of a right secured by the Constitution or laws of the United States.

## V. Conclusion and Recommendation

For the reasons discussed herein, the undersigned recommends that the Court GRANT the Rose Defendants' Motion and dismiss Count X.

Dated: January 2, 2020

*/s/ Kathleen B. Burke*
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).