IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN A. ARMATAS, Individually | ) | CASE NO.  5:19-cv-00349 |
| and as Personal Medicare Representative | ) | |
| and Executor of the Estate of | ) | |
| ALEXANDER E. ARMATAS, | ) | |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| AULTMAN HEALTH | ) | |
| FOUNDATION, et al., | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendants. | ) | |
| | ) | (Plaintiff's Motion to Dismiss |
| | ) | Counterclaims) |

I.      **Introduction**

This case arises from the hospitalization and death of Alexander E. Armatas

("Alexander") at Aultman Hospital in Canton, Ohio, in late 2014.  Alexander's son, Steven A.

Armatas ("Steven"), filed this action on February 15, 2019, in three capacities: on his own

behalf, as the personal Medicare representative for his father, and as executor of his father's

estate.  Plaintiffs (referred to collectively herein as "Plaintiff") assert 12 state and federal claims

1

against 14 Defendants.[1]  Doc. 1. This case is the re-filing of a case previously filed by Plaintiff in the Stark County, Ohio, Court of Common Pleas on December 28, 2016.[2]

On April 22, 2019, three of the Defendants – Aultman Hospital, Aultman Health Foundation ("AHF"), and AultCare Insurance Corporation ("AultCare") (referred to collectively herein as the "Aultman Defendants") – filed counterclaims against Steven A. Armatas ("Steven"), individually, alleging fraud in connection with a "Statutory Form Power of Attorney" ("POA") Steven submitted with a grievance he filed on behalf of Alexander.  Doc. 25, pp. 34-38, ¶¶ 1-34, Doc. 27, pp. 36-40, ¶¶ 1-33.

Pursuant to the Court's referral of this case to the undersigned for general pretrial supervision and issuance of a Report & Recommendation on any dispositive motions (Doc. 45), the undersigned submits this Report & Recommendation as to Plaintiff's Motion to Dismiss Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 36, Doc. 37) ("Motion").[3]   The Aultman Defendants filed oppositions to Plaintiff's Motion (Doc. 48, Doc. 49) and Plaintiff filed a reply (Doc. 62).

---

[1] The 14 Defendants named in the Complaint are: Nihad Boutros, M.D., Eyad Nashawati, M.D., Matthew Knoch, M.D., Jeffrey Miller, M.D., Chadi E. Bouserhal, M.D., and Pulmonary Physicians, Inc. of Canton, Ohio ("ICU Defendants"); Aultman Health Foundation; Aultman Hospital; AultCare Insurance; M. Richard Stjernholm, D.O. and Ohio Physicians Professional Corporation dba Surgical Associates of Canton of OPPC (collectively, the "Stjernholm Defendants"), and Mark N. Rose, Gregory Haban, M.D., and Timothy Regula (collectively, the "Rose Defendants").  Doc. 1.

[2] Plaintiff voluntarily dismissed the state court case on February 20, 2018 pursuant to Ohio Civil Rule 41(A)(1)(a). Doc. 1, p. 4, ¶¶ 1-4.  The Complaint filed in this Court added the three defendants who were not named in the state court action.  Doc. 1, p. 4, ¶ 4.

[3] In a previously filed Report and Recommendation, the undersigned recommended that all Counts asserted against the Aultman Defendants, with the exception of Count II (Wrongful Death) as asserted against Defendant Aultman Hospital, be dismissed.  Doc. 119.

For the reasons explained herein, the undersigned recommends that the Court GRANT Plaintiff's Motion to Dismiss (Doc. 36, Doc. 37) and dismiss the Aultman Defendants' Counterclaims for fraud as barred by the statute of limitations.

## II. Background

### A. The Counterclaims

AultCare filed an Answer and Counterclaim (Doc. 25) and Aultman Hospital and AHF filed an Answer and Counterclaim (Doc. 27).  The Counterclaims are generally identical with the exception that AultCare alleges it incurred expenses in connection with processing a fraudulent grievance.  Doc. 25, p. 37, ¶ 30.  That allegation is not made by Defendants Aultman Hospital and AHF.

### B. Factual Allegations Relevant to the Counterclaims

#### i. Alexander's hospitalization at Aultman Hospital

As more fully detailed in Reports and Recommendations filed in connection with dispositive motions filed by Defendants in this action, Steven is the only child of Alexander.  *See* Docs. 117-119.  On October 11, 2014, Alexander was rushed to the hospital after suffering a cardiac episode while at home.  *Id.*  Alexander was 97 years old at the time of his hospitalization. *Id.*  While Alexander was hospitalized, various physicians recommended to his family that, due to his condition, they should remove him from life support.  *Id.*  Alexander's family strongly disagreed with their recommendations and did not remove Alexander from life support.  *Id.*

Also, as described in the earlier filed Reports and Recommendations, while his father was admitted, Steven became concerned about discoloration developing on his father's right toes and leg and it was eventually determined that dry gangrene was setting in.  Docs. 117-119.  The evening prior to Alexander's death, Steven and Alexander's wife were called to the hospital by

Alexander's attending physician for the evening who informed them that Alexander's dry gangrene had developed into sepsis and the infection was affecting his bloodstream and vital organs.  *Id.*  Steven and his mother returned to the hospital and remained by Alexander's bedside until his death on December 31, 2014.  *Id.*

### ii.  Grievances

Prior to Alexander's death, on November 22, 2014, Steven contacted PrimeTime Health Plan ("PTHP"), Alexander's health insurance provider,[4] via telephone, stating he was intending to file a grievance on behalf of Alexander regarding care and treatment his father had received as a patient at Aultman Hospital.  Doc. 25, p. 34, ¶ 4.[5]  The agent handling the phone call from Steven asked Steven whether he had a power of attorney and Steven responded that he did not.  Doc. 25, p. 34, ¶ 5.  The agent informed Steven that he would need a power of attorney in order to file a grievance.  Doc. 25, p. 34, ¶ 6.

On or about November 24, 2014, Steven filed with PTHP a document entitled "Grievance filed against Aultman Hospital, Nihal M. Boutros, M.D., Jeffrey Miller, M.D. and Eyad Nashawati, M.D. on behalf of Alexander E. Armatas[.]"  Doc. 25-5, Doc. 25, p. 34., ¶ 7.  No power of attorney or other document authorizing the filing of the grievance was provided."  Doc. 25, p. 34, ¶ 7.  Steven submitted an updated version of the grievance on December 2, 2014.  Doc. 25-6, Doc. 25, p. 34, ¶ 8.

On December 2, 2014, PTHP informed Steven that his grievance could not be processed because he did not submit appropriate documentation, which PTHP informed Steven "may

---

[4] According to the Complaint, Defendant AultCare "is and was a corporation duly licensed and registered under the laws of the State of Ohio and the sponsor and operator of PrimeTime Health Care Plan-Timken Company, a Medicare Advantage Plan (the AultCare MAP"), Alexander's sole health insurance provider."  Doc. 1, p. 5, ¶ 9.

[5] In light of the similarities between the Counterclaims, citations are generally made only to AultCare's Counterclaim, i.e., Doc. 25.

include a durable power of attorney, a health care proxy, an appointment of guardianship, an appointment of a representative, or other legally recognized forms of appointment." Doc. 25, pp. 34-35, ¶ 9, Doc. 25-1.

On December 10, 2014, Steven provided PTHP with a letter and POA. Doc. 25, p. 35, ¶ 10, Doc. 25-7, Doc. 25-8. In the letter, Steven stated ". . . enclosed is a copy of a Durable Power of Attorney which our family had prepared during my father's last hospital visit in late 2011. I was able to locate it over the weekend in some misplaced files." Doc. 25, p. 35, ¶ 11, Doc. 25-7. The POA states that Alexander E. Armatas designates Steven A. Armatas, Esq., as his agent. Doc. 25, p. 35, ¶ 12, Doc. 25-8. The POA was notarized by Steven A. Armatas. *Id.* On December 12, 2014, PTHP informed Steven via telephone and in writing that, since appropriate documentation had been received, the grievance would be processed. Doc. 25, p. 35, ¶¶ 13-14, Doc. 25-9.

The Aultman Defendants allege that the POA submitted by Steven appears to be a forgery. Doc. 25, p. 36, § 18. As evidence of the alleged forgery, the Aultman Defendants point to the following indicators: the POA states that Alexander granted to Steven authority to act for him with respect to subjects defined in the Uniform Power of Attorney Act, which Act did not become effective until more than three months after the POA was allegedly signed; the signature on the POA shows markings consistent with remnants of an underlining that was incompletely erased, indicating the signature was copied and pasted from another document; and the initials "A.A." on the POA also show markings that are consistent with remnants of an underlining that was incompletely erased, indicating the initials were copied from another document and pasted on the form. Doc. 25, p. 36, ¶¶ 18-25.

5

The Aultman Defendants contend that, because the document appears to be a forgery, Steven was not authorized to file a grievance on behalf of his father.  Doc. 25, p. 37, ¶ 26. Further, they allege that, because the document submitted to PTHP appears to be a forgery, Steven "knowingly, willingly, and with actual malice forged the signature on the POA that he submitted to PTHP, and then knowingly, willingly, and with malice notarized that forged signature, both acts being done with the intention of fraudulently inducing PTHP to process his grievance."  Doc. 25, p. 37, ¶ 27.  They contend that PTHP reasonably relied on the forged POA in processing the grievance and did so to its detriment.  Doc. 25, p. 37, ¶ 28.  They contend that AultCare incurred expenses in processing the fraudulent grievance and the Aultman Defendants incurred expenses and continue to incur expenses in defending claims alleged against them by Plaintiff relating to the fraudulent grievance.  Doc. 25, p. 37, ¶¶ 29-32, Doc. 27, p. 39, ¶¶ 29-31. The Aultman Defendants contend that Steven is liable for compensatory and punitive damages relating to the alleged fraudulent POA.  Doc. 25, pp. 37-38, ¶¶ 32-34, Doc. 27, pp. 39-40, ¶¶ 31-33.

## III.    The Plaintiff's Motion to Dismiss

Plaintiff argues that the Aultman Defendants' Counterclaims should be dismissed because: (1) the Counterclaims fail to plead "fraud" with particularity as required under the Federal Civil Rules; (2) do not satisfy the common law elements of the tort alleged; and (3) were not filed within the applicable statute of limitations.  Doc. 36.

## IV.    Law and Analysis

### A.  Standard of Review

In considering a motion to dismiss, a court must accept all well-pleaded factual allegations of the complaint as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, **555**(?)

(2007). However, the court need not "accept as true a legal conclusion couched as a factual allegation." *Id*. (internal citations omitted). Moreover, to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570. *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (internal quotations omitted). "When considering a motion to dismiss on the ground of a statute of limitations, the Court must decide whether 'it is apparent from the face of the complaint that the limit for bringing the claim[s] has passed.'" *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F.Supp.3d 734, 761 (2019) (quoting *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (noting alteration in original)).

    **B. The undersigned recommends that the Court find that the Aultman Defendants' Counterclaims for fraud are barred by the four-year statute of limitations in O.R.C. § 2305.09**

    In Ohio, "a cause of action for fraud must be brought within four years after the fraud was or should have been discovered. No more than a reasonable opportunity to discover the fraud is required to start the period of limitation." *Au Rustproofing Center, Inc. v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir. 1985) (discussing O.R.C. § 2305.09); *see also Riddick v. Taylor*, 105 N.E.3d 446, 451 (Ohio App. Ct. 2018). "Information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence. Once sufficient indicia of fraud are shown, a party cannot rely on its unawareness or the efforts of the opposition to lull it into a false sense of security to toll the

7

statute." *Au Rustproofing*, 755 F.2d at 1237 (internal citations omitted); *see also Riddick*, 105 N.E.3d at 451 ("A person should be aware that a fraud has occurred when the facts that she or he possesses would alert a reasonable person to the possibility of fraud.").

The Aultman Defendants filed their fraud counterclaims on April 22, 2019.  Doc. 25, Doc. 27.  The document upon which the Aultman Defendants' fraud claim relies is the POA which, according to the Aultman Defendants' Counterclaims, was delivered to PTHP on December 10, 2014.  Doc. 25, p. 35, ¶ 10, Doc. 27, p. 37, ¶ 10.  Since the POA was within the Aultman Defendants' control as of December 10, 2014, Plaintiff argues that the Aultman Defendants discovered or should have discovered the alleged fraud as of that date and therefore the statute of limitations expired four years later on December 10, 2018, making the Counterclaims time-barred.

The Aultman Defendants contend that the statute of limitations should not bar their fraud claim because Plaintiff attempted to conceal the fraud.  Doc. 48, pp. 4-6.  In making this argument, the Aultman Defendants allude to the discovery rule but they do not state when they discovered the alleged fraud.  *Id.*  First, they argue that Plaintiff concealed the fraud by including a cover letter when he presented the POA wherein he explained when the POA had been executed and how it had been misplaced but recently discovered.  Doc. 48, pp. 5-6.  Thus, the Aultman Defendants assert that they had no reason to examine the document to determine whether it was genuine.  *Id.*  Second, they argue that Plaintiff submitted a verified complaint when he filed the action against Defendant AHF in Stark County Common Pleas on September 29, 2015, and, in doing so, swore under oath that the POA was genuine.  Doc. 48, p. 6.

The Aultman Defendants' attempt to avoid the running of the four-year statute of limitations as of December 10, 2014, is futile.  The basis for the Aultman Defendants' fraud

claim is their allegation that Steven forged the POA that he presented to them.  As evidence of the alleged forgery, the Aultman Defendants point to the following indicators: the POA states that Alexander granted Steven authority to act for him with respect to subjects defined in the Uniform Power of Attorney Act, which Act did not become effective until more than three months after the POA was allegedly signed; the signature on the POA shows markings consistent with remnants of an underlining that was incompletely erased, indicating the signature was copied and pasted from another document; and the initials "A.A." on the POA also show markings that are consistent with remnants of an underlining that was incompletely erased, indicating the initials were copied from another document and pasted on the form.  Doc. 25, p. 36, ¶¶ 18-25.

"No more than a reasonable opportunity to discover the fraud is required to start the period of limitation." *Au Rustproofing*, 755 F.2d at 1237.  The Aultman Defendants have not demonstrated that the very facts upon which they rely to support their fraud claim were not "sufficient indicia of fraud" as of December 10, 2014.  The indicators of fraud, as alleged by the Aultman Defendants, appear on the face of the POA document.  In fact, the Aultman Defendants state: "The markings (there are several) are not microscopic, but plainly visible without any enlargement of the image."  Doc. 48, p. 2.  Thus, as of December 10, 2014, the date Plaintiff provided a copy of the POA, the Aultman Defendants had a reasonable opportunity to discover the fraud and they should not be entitled to rely upon their "unawareness or the efforts of the opposition to lull [them] into a false sense of security to toll the statute." *Au Rustproofing*, 755 F.2d at 1237.

Considering the foregoing, the undersigned concludes that the Aultman Defendants discovered or should have discovered the possibility of the alleged fraud on December 10, 2014,

when the POA came within their control.  Thus, the statute of limitations for their fraud claims

expired four years later on December 10, 2018, prior to the filing of their fraud claim on April

22, 2019.  Accordingly, the undersigned recommends that the Court find the Aultman

Defendants' Counterclaims are barred by the four-year statute of limitations for fraud claims set

forth in O.R.C. § 2305.09.

### C. The undersigned recommends that the Court find that the Aultman Defendants' Counterclaims are not covered by the five-year statute of limitations for identity fraud claims

The Aultman Defendants contend that their Counterclaims allege that Steven used his

father's personal identifying information, i.e., his name, to misrepresent himself as having full

legal and personal rights for his father and, therefore, their fraud claim should survive because it

was filed within the five-year statute of limitations for identity fraud claims under O.R.C. §

2913.49.  Doc. 48, pp. 6-7.

It is correct that the four-year statute of limitations for fraud does not apply "when the

cause of action is a violation of section 2913.49 of the Revised Code[.]"  O.R.C. § 2305.09(C).

In such cases, the statute of limitations is five years after the cause thereof accrued.  *Id.*

O.R.C. § 2913.49 – Identity Fraud; affirmative defenses – provides for a right to bring a

civil action relating to identity fraud.  O.R.C. § 2913.49(J).  More particularly, the statute

provides:

> (J) In addition to the penalties described in division (I) of this section, anyone injured in person or property by a violation of division (B), (D), or (E) of this section who is the owner of the identifying information involved in that violation has a civil action against the offender pursuant to section 2307.60 of the Revised Code. That person may also bring a civil action to enjoin or restrain future acts that would constitute a violation of division (B), (D), or (E) of this section.

O.R.C. § 2913.49(J).

10

The Aultman Defendants did not plead a statutory claim for relief under O.R.C. §

2913.49(J).  Moreover, even if they had sufficiently pleaded such a claim, the claim belongs to

the person who is the "owner of the identifying information involved[.]"  O.R.C. § 2913.49(J).

Alexander, not the Aultman Defendants, was the owner of the "information involved."  Thus, the

Aultman Defendants have not demonstrated that they would have a right under O.R.C. §

2913.49(J) to bring a civil action.

Considering the foregoing, the undersigned recommends that the Court find that the

Aultman Defendants' Counterclaims are not covered by the five-year statute limitations for

identity fraud claims.

Because the foregoing statute of limitations analysis resolves Plaintiff's Motion, it is not

necessary to address the Plaintiff's alternative arguments for dismissal of the Counterclaims.

V.      **Conclusion and Recommendation**

For the reasons discussed herein, the undersigned recommends that the Court GRANT

Plaintiff's Motion to Dismiss (Doc. 36, Doc. 37) and dismiss the Aultman Defendants'

Counterclaims.


Dated: January 8, 2020                          */s/ Kathleen B. Burke*

                                                Kathleen B. Burke
                                                United States Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir.
1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).